**COMMONWEALTH of Pennsylvania,
Appellee**

v.

**John K. YOUNG, Appellant.**

Superior Court of Pennsylvania.

Submitted July 6, 2004.
Filed April 21, 2005.

---

John K. Young, appellant, pro se.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: HUDOCK, MONTEMURO * and KELLY, JJ.

HUDOCK, J.:

¶ 1 This is a *pro se* appeal from the order denying Appellant's request for DNA testing pursuant to 42 Pa.C.S.A. section 9543.1. For the reasons that follow, we affirm.

¶ 2 The lower court summarized the pertinent facts and procedural history of the case as follows:

On the morning of March 11, 1975, the decedent, Marlene Mapp, was in her

---

* Retired Justice assigned to Superior Court.

house with her two young children when her next-door neighbor, Jaqueline Mack, heard the sounds of loud screaming and footsteps coming from Ms. Mapp's house. She also heard the decedent's young son crying out to someone to "leave his mother alone". Ms. Mack immediately called the police and then called over to the decedent's house. Her son, Larry Mapp, who was six years old at the time of the incident, answered the phone and stated to her that his mother had been stabbed.

Ms. Mack hung up the phone and went to the rear door of the Mapp residence and pushed the door open. She was met by Larry [Mapp] who was covered with blood. The police arrived shortly thereafter, and discovered Ms. Mapp lying wedged against her front door at the foot of the staircase that led to the second floor. There was a trail of blood from a bedroom on the second floor to the bottom of the staircase on the first floor. The decedent's purse was lying open on the living room sofa with its contents strewn about the room. A post-mortem examination revealed that Ms. Mapp died from a loss of blood that resulted from stab wounds that severed vital veins and arteries.

An examination of the decedent's home disclosed that entry had been gained by someone using a coat hanger to unlatch the door. The front door was still locked when the police arrived, and there was no other evidence of a forced entry.

After finding physical evidence in the backyard of the Mapp home, the police went to the house directly behind it and apprehended the defendant. Once he was in custody, he admitted to breaking into the home and killing Ms. Mapp when she attempted to disarm him. He also described how he entered the premises and the actions that he took immediately before and after he stabbed the decedent to death. That information was used to secure a search warrant for the house in which [Appellant] lived. Upon the execution of the warrant less than fifteen hours after the crime, the police seized a knife, shoes, pants, and a washcloth that contained [human blood.]

Larry Mapp testified at trial and told the jury that he was sleeping in his mother's bed when he was "awakened by voices" and saw [Appellant] on the bed on his knees. He stated that [Appellant] ordered the mother to tell Larry to take his five-year old sister out of the room. As Larry left the room, he saw [Appellant] pull out a knife. He then ran downstairs to get a knife so that he could attempt to defend his mother. As he was running back upstairs, he saw [Appellant] run down the stairs and out the back door. Larry testified that he recognized [Appellant] as a person who he had previously seen hanging up clothes in the backyard of the [house] directly to the rear of his own.

\* \* \*

[Appellant] was charged with the murder of Marlene Mapp on March 11, 1975. [Appellant] was tried before the Honorable Theodore B. Smith, with a jury, and he was convicted of second-degree murder, robbery, burglary, and possessing an instrument of crime on August 26, 1975. He was later sentenced to a mandatory term of life imprisonment for the murder conviction and a concurrent ten to twenty years' imprisonment for the burglary conviction. Sentence was suspended on the two remaining convictions.

[Appellant appealed directly to the Supreme Court of Pennsylvania from the judgment of sentence imposed on the murder conviction. An appeal from

the judgment of sentence imposed on the burglary conviction was filed in the Superior Court and later certified in the Supreme Court.] In that appeal, his only claim for relief was his allegation that the prosecutor utilized improper remarks and innuendo in his closing argument to the jury. [The Supreme Court affirmed his judgment of sentence on March 23, 1978. *See Commonwealth v. Young,* 477 Pa. 212, 383 A.2d 899 (1978)].

On September 24, 1979 [Appellant] filed his first *pro se* Post Conviction Hearing Act ("PCHA") petition. Private counsel was appointed for him, and the amended petition included the claim that [Appellant's] inculpatory statement was obtained unconstitutionally and in violation of his rights as a juvenile at the time he was questioned by police personnel. The PCHA court dismissed the petition on April 13, 1982, and the dismissal was affirmed by the Superior Court on the grounds that his trial counsel could not have been "ineffective" because the confession was never introduced into evidence at trial. [*See Commonwealth v. Young,* 318 Pa.Super. 538, 465 A.2d 684 (1983).]

[Appellant] filed a second *pro se* PCHA petition on November 3, 1986, and that petition was dismissed without a hearing on May 31, 1989. In that petition, he argued that it was reversible error for the trial court to have allowed the introduction of the physical evidence that was seized from his residence because he contended that it was the "tainted fruit" of his involuntary confession. The Superior Court affirmed the dismissal of his second PCHA petition in a "memorandum opinion" that was dated August 20, 1993, and [the court] also held that [Appellant's] confession was, in fact, voluntary. [*See Commonwealth v.*

*Young,* 432 Pa.Super. 693, 635 A.2d 209 (1993) (unpublished memorandum). Thereafter the Supreme Court denied Appellant's petition for allowance of appeal. *See Commonwealth v. Young,* 537 Pa. 632, 642 A.2d 485 (1994)].

Trial Court Opinion, 3/17/04, at 3–5, 1–3. On November 27, 2002, Appellant filed a motion pursuant to the Post–Conviction Relief Act[1] (PCRA) requesting the court to order DNA testing of the blood stained articles which had been removed from his home and which the Commonwealth introduced at trial as having on them blood which was consistent with the victim's blood type. The Commonwealth filed a brief in opposition on June 2, 2003. On that same date, the court sent a notice of its intent to dismiss the petition, pursuant to Pa.R.Crim.P. 907. Appellant filed a response on June 17, 2003, and on July 3, 2003, the court dismissed the petition without a hearing. This appeal followed. The court directed Appellant to file a concise statement of matters complained of on appeal, Appellant complied, and the court has filed an opinion addressing the claims.

¶ 3 Appellant now presents for our consideration the sole issue of whether the "lower court erred in dismissing [his] Motion for Post Conviction DNA testing under new amendment [42 Pa.C.S.A. section 9543.1] after treating such motion as [a PCRA] petition." Appellant's Brief at 3. Appellant's argument is two-fold. First, Appellant contends that the trial court erred in treating his request for DNA testing as a PCRA petition. Secondly, he asserts that he has satisfied the directives of section 9543.1 and, as such, is entitled to DNA testing.

¶ 4 With respect to Appellant's first argument that the trial court improperly treated his request for DNA testing

---

1. 42 Pa.C.S.A. §§ 9541–46.

as a PCRA petition, we find it to be not only without merit but also non-dispositive of his request for DNA testing. Appellant claims that, although he used the standard form for PCRA petitions, the court erred in treating it as a PCRA motion because his petition clearly stated "Motion for Post Conviction DNA Testing." Appellant challenges the court and the Commonwealth's reference to his request for DNA testing as his third PCRA petition. Appellant argues that had the court truly treated his request as a PCRA petition, pursuant to the time requirements of the PCRA, his petition should have been considered untimely, and the court should have dismissed the petition without ruling on its merits. However, Appellant points out that while the court and Commonwealth refer to his request as a PCRA petition, they, in fact, treated it as a motion for DNA testing and addressed his request on the merits. Thus, Appellant requests that this Court "clarify the record by treating this appeal as an appeal from the denial of [his] Motion for Post Conviction DNA test and not as an appeal from [a] PCRA petition." Appellant's Brief at 8. While Appellant's argument is inartfully phrased, it is apparent that Appellant is concerned that we may treat his request for DNA testing as an untimely PCRA petition. Appellant's concerns, however, are unsubstantiated. In *Williams v. Erie County District Attorney's Office*, 848 A.2d 967, 969 (Pa.Super.2004), *appeal denied*, —— Pa. ——, 864 A.2d 530 (2004), we found that a motion for DNA testing constitutes a post

conviction petition under the PCRA "regardless of the title of the document filed." We further reiterated that "an appellant's 'motion for DNA testing (filed in advance of utilizing the PCRA as a vehicle to obtain DNA results) avoids the one year time bar of 42 Pa.C.S.A. § 9545.'" *Id.* (quoting *Commonwealth v. McLaughlin*, 835 A.2d 747, 750 (Pa.Super.2003)). *See generally, Commonwealth v. Heilman*, 2005 PA Super. 19, 867 A.2d 542 (2005) (treating motion for DNA testing as timely PCRA petition pursuant to 42 Pa.C.S.A. section 9543.1). Thus, in this instance, both the PCRA court and the Commonwealth properly treated Appellant's request for DNA testing pursuant to section 9543.1 as a PCRA petition.[2] The PCRA court further correctly found that this request survived the one-year time bar proscribed by section 9545 and addressed Appellant's request on its merits.

¶ 5 Having determined the propriety of Appellant's petition for review, we must next address whether Appellant has satisfied the *prima facie* requirements set forth in section 9543.1 necessary to entitle him to the requested DNA testing. Section 9543.1 provides in relevant part:

§ 9543.1  **Postconviction DNA testing**

(a) Motion.—

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment ... may apply by making a written motion to the sen-

---

**2.** Our decision today does not conflict with the holding in *Commonwealth v. Weeks*, 831 A.2d 1194 (Pa.Super.2003), wherein we recognized that a motion for DNA testing should be made separately from and before a PCRA petition is filed. While we are cognizant that a motion for DNA testing is a prerequisite to a PCRA petition requesting relief, the fact remains that a filing pursuant to section 9543.1 requesting DNA testing is a post conviction

filing. Thus, while filing a motion for DNA testing is preferred, where as here, a *pro se* defendant's sole request in a PCRA petition is the equivalent of a section 9543.1 motion, we find that the trial court and this Court may address it on its merits. To consider a request for DNA testing as untimely based solely on the nomenclature used would merely elevate form over substance.

tencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

* * *

(c) Requirements.—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1) (i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and

(iii) acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2) (i) assert the applicant's actual innocence of the offense for which the applicant was convicted;

* * *

(3) present a prima facie case demonstrating that the:

(i) identity of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted[.]

42 Pa.C.S.A. § 9543.1.

¶ 6 In this instance, Appellant contends that if DNA testing was performed on the bloodstained pants, shoes, knife and washcloth found in his home, the results of the test would prove that the blood was consistent with his blood and not that of the victim, as both he and the victim have type "O" blood. Appellant further alleges that, because the identity of the perpetrator was at issue in the proceedings, DNA testing of these items will prove his actual innocence. While Appellant acknowledges that the victim's son identified him as the assailant, Appellant argues that this identification was unreliable and, as such, the only evidence that linked him to the crime was the bloodstained articles upon which he now requests DNA testing be performed. Thus, Appellant contends that the PCRA court erred in dismissing his request for testing.

¶ 7 In finding that the facts of this case disqualified Appellant from the relief requested, the PCRA court stated:

[Appellant] never raised the issue of "identity" at trial nor does he allege any such facts in his PCRA petition. He merely asserts that he "is innocent of this crime and have been trying to prove it for the past 28 years". Even the most cursory review of the record in this case reveals that the only issues that ever existed were those of a procedural nature, and that "identity" and "actual innocence" were never real factors in the pre-trial or trial proceedings, direct appeal, post-conviction petitions, or the instant attempt to obtain the right to DNA testing.

First, [Appellant] gave a full confession to the murder in which he spelled out the circumstances surrounding the stabbing of Marlene Mapp. Though there is arguably some question as to its legal admissibility, given the unsettled state of the law at that time for juvenile

confessions,[3] there can be no question that it totally undermines [Appellant's] ability to avow "actual innocence". The confession was not introduced into evidence at [Appellant's] trial, but the Superior Court evaluated the circumstances surrounding it in their 1993 opinion, and held as follows[:]

> No evidence can be found to suggest that appellant was subjected to physical or psychological abuse, nor were any threats or promises utilized to induce his inculpatory statement. Thus appellant's confession, when studied in the light of the *Christmas* standard, does not appear to have been an egregious violation of his rights. We conclude that the confession was voluntarily made. [*Commonwealth v. Young*, 432 Pa.Super. 693, 635 A.2d 209 (1993) (unpublished memorandum) (No. 3312 PHL 1992, filed August 20, 1993, at p. 7)].

In addition, the deceased's son testified at trial and positively identified [Appellant] as the assailant who pulled out a knife in his mother's bedroom, and then [ran] down the stairs to escape. Larry Mapp's testimony that he recognized [Appellant] as his "rear yard" neighbor erased any doubt that there were questions about his identification of him or the "identity" of the perpetrator of this gruesome murder.

Finally, the numerous items of physical evidence militate strongly against any contention that the identity of the accused was or is in issue, or that a rational claim of "actual innocence" could be asserted. The deceased's blood covered numerous items that were taken from [Appellant's] house within hours after the murder was committed. There was also a butcher knife with traces of human blood found in his kitchen, and blood was also detected on the kitchen sink drain board.

Trial testimony from expert witnesses confirmed that all of the blood in the house and on the items found in it matched the blood of the deceased. Even without the confession and the eyewitness identification, the physical evidence alone constituted overwhelming indicia of guilt and leaves virtually no doubt as to the identity of the perpetrator of this crime.

PCRA Court Opinion, 3/17/04, at 9–11.

¶ 8 Upon examination of the record, we disagree with the PCRA court's conclusion that Appellant did not raise the issue of identity at trial and/or in his current peti-

---

**3.** At the time of Appellant's confession, our Supreme Court had articulated a rule in *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), which provided that a juvenile could not "effectively waive his constitutional rights to remain silent and to have assistance of counsel without first being accorded an opportunity to consult with an adult who is interested in that juvenile's welfare[.]" *Commonwealth v. Christmas*, 502 Pa. 218, 222, 465 A.2d 989, 991 (1983). Subsequently, in *Christmas*, the Court explicitly overruled *McCutchen* and replaced the *per se* rule with a totality of the circumstances standard for judging a juvenile's waiver of rights as a voluntary and knowing one. Specifically, the Court in *Christmas* found that the circumstances to be considered in such a determination "include the manner in which the juvenile was treated by police authorities, as well as the juvenile's age, experience, background intelligence, capacities and prior record." *Id.* 502 Pa. at 224, 465 A.2d at 992. While we are cognizant that *Christmas* has since been overruled in part by *Commonwealth v. Williams*, 504 Pa. 511, 521, 475 A.2d 1283, 1287 (1984), in so far as *Christmas* created a rebuttable presumption that a juvenile is incompetent to waive his constitutional rights without first having an opportunity to consult with an interested and informed adult, our Supreme Court has retained the totality of the circumstances standard in determining whether a confession is knowing and voluntary.

tion. Clearly, at trial Appellant's counsel vigorously challenged the Commonwealth's witnesses on cross-examination regarding the evidence which linked Appellant to the crime and in the identification of Appellant as the perpetrator. Appellant's counsel further postulated in his arguments to the jury that the Commonwealth had failed to establish that Appellant had committed the crime and that the identification of Appellant by the victim's seven-year old son at trial was unreliable due to the boy not identifying Appellant until trial and then only after the police and district attorney's office suggested to him that Appellant was the man that had killed his mother. Similarly, in his PCRA petition requesting DNA testing, Appellant alleges that he was innocent of the offense and that his identity as the perpetrator of the crime has always been an issue. Thus, the PCRA court's findings in this regard are in error.

¶ 9 The PCRA court further mischaracterizes the evidence at trial when it states that expert witnesses at trial confirmed that all of the blood on the items found within Appellant's home matched the blood of the deceased. At trial, the Commonwealth's expert witness, Joseph A. Vorozilchak, a chemist for the Philadelphia Police Department, testified that he had performed analysis on the blood to determine whether the blood was human or animal. While Mr. Vorozilchak confirmed that the blood found on all items in Appellant's home was human, he further conceded that he did not perform any testing to determine blood type. Thus, the evidence presented at trial did not establish that the blood on the articles found in Appellant's home matched the blood type of the victim.

■ ¶ 10 Notwithstanding these errors, we agree with the PCRA court's conclusion that Appellant has not met the *prima*

*facie* requirements set forth in section 9543.1 necessary to entitle him to the requested DNA testing. Although Appellant has claimed his innocence in his motion, we find that his confession to the murder bars him from asserting a claim of actual innocence for the offense for which he was convicted. While a confession, in and of itself, generally would not bar such a request, an appellant cannot assert a claim of actual innocence where, as here, the validity of the confession has been finally litigated, found not to be coerced, and was knowingly and voluntarily given. *See Commonwealth v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995) (providing that under the law of the case doctrine "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter"). *Compare Williams,* 848 A.2d at 972 (holding that section 9543.1 did not apply to defendant who plead guilty to endangering welfare of children as defendant's guilty plea nullified any subsequent claim that the "identity of or the participation in the crime by the perpetrator was at issue").

¶ 11 Moreover, even if we would have found Appellant's confession did not bar recourse pursuant to Section 9543.1, Appellant would still not be entitled to the relief requested. As the PCRA court noted above, the victim's son unequivocally identified Appellant as the person who had broken into their home and who had ordered him and his little sister out of the bedroom while producing a knife and holding it toward his mother. Although Appellant challenged the credibility of Larry Mapp's testimony and his identification of Appellant as the perpetrator, substantial evidence of identification was presented to the jury for their consideration. Thus, even assuming that the DNA testing of the

pants, shoes, knife and washcloth produced exculpatory results, it would not be enough to establish Appellant's actual innocence of the offense for which he was convicted.

¶ 12 For the foregoing reasons, Appellant has failed to satisfy the requirement of 42 Pa.C.S.A. section 9543.1. Accordingly, we affirm the PCRA court's order denying Appellant's request for DNA testing.

¶ 13 Order affirmed.