Justice CASTILLE joined this dissenting opinion.

COMMONWEALTH of Pennsylvania

v.

**Anthony WRIGHT, Appellant.**

Superior Court of Pennsylvania.

Argued July 10, 2007.

Filed Oct. 17, 2007.

Sondra R. Rodrigues, Philadelphia, Colin Starger, Nina Morrison, The Innocence Project, New York, NY, for appellant.

Peter Carr, Hugh J. Burns, Jr., Asst. Dist. Attys., Philadelphia, for Com., appellee.

BEFORE: JOYCE,* PANELLA and POPOVICH, JJ.

---

* Judge JOYCE did not participate in the consideration or decision of this case.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Anthony Wright, appeals from the order entered on April 4, 2006, by the Honorable D. Webster Keogh, Court of Common Pleas of Philadelphia County, which dismissed his motion for DNA testing filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  For the reasons set forth below, we find that Wright's confession to the murder, rape, and robbery of the victim has been finally litigated, found not to be coerced, and was knowingly and voluntarily given; as such, pursuant to *Commonwealth v. Young*, 873 A.2d 720 (Pa.Super.2005), *appeal denied*, 586 Pa. 739, 891 A.2d 733 (2005), Wright cannot assert his actual innocence in this PCRA proceeding.  Accordingly, we affirm.

¶ 2 The PCRA court set forth the relevant facts of the case as follows:

The evidence at trial established that on the evening of October 18, 1991, [Wright] invaded the home of Louise Talley, a seventy-seven[-]year-old widow, and proceeded to rape her, rob her, and stab her to death.  The following afternoon, in response to calls from concerned relatives, Philadelphia police officers entered the victim's home and found her nude body on the bedroom floor; she had been stabbed ten times.  Additionally, the sheets of her bed were covered with blood and stained with semen.  [Additionally, a knife covered with blood was found near her body.  N.T. 5/26/93, 90.]  While at the scene, the police were approached by a man who implicated the [Wright] in the killing.  Following an investigation, on October 20, 1993, the police contacted [Wright], who agreed to give a statement.  After

---

1.   42 Pa.Cons.Stat.Ann. §§ 9541–9546.

receiving Miranda warnings, Petitioner gave a statement in which he confessed to raping, robbing, murdering Ms. Talley, and burglarizing her home.

In his statement, [Wright] noted that he was wearing a black Chicago Bulls sweatshirt, a pair of blue jeans with suede on them, and Fila sneakers. The police obtained a search warrant for Petitioner's home and recovered these items from underneath the mattress in [Wright's] bedroom. The sweatshirt and blue jeans were splattered with blood, and scientific analysis revealed that this blood matched that of the victim and showed characteristics that were shared by only 1.4% of the Black population. The blue jeans also had a stain on the crotch, which although not conclusively identified, appeared consistent with a combination of [Wright's] seminal fluid and the fluids of the victim.

PCRA Court Opinion, 7/10/06, at 1–2 (brackets added).

¶ 3 Prior to trial, on March 17, 1992, Wright filed a motion to suppress the statement he had given to the police. On December 16, 1992, following a suppression hearing, the trial court found that Wright's confession was knowing and voluntary, and therefore denied Wright's motion, thus allowing Wright's detailed confession given to police to be admitted into evidence at trial.

¶ 4 On June 8, 1993, following a jury trial, Wright was convicted of first-degree murder, burglary, rape, robbery, and possession of an instrument of crime. Thereafter, on January 31, 1994, the trial court sentenced Wright to life imprisonment for his conviction of murder in the first degree.[2] Wright filed a timely direct appeal, which did not raise any issue with respect to the denial of his suppression motion, and this Court affirmed the judgment of sentence on August 14, 1995. *See Commonwealth v. Wright*, 447 Pa.Super. 638, 668 A.2d 1200 (1995) (unpublished memorandum). No request for review was filed in our Supreme Court.

¶ 5 Wright then filed a PCRA petition on August 13, 1996. In his petition, Wright did not make any allegations concerning his confession or the denial of his suppression motion. Following the appointment of counsel, a "no-merit" letter was submitted to the PCRA court, pursuant to *Commonwealth v. Turner*, 518 Pa. 491, 544 A.2d 927 (1988), and *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988). The PCRA court dismissed the petition on December 1, 1997. Wright appealed, however, this Court subsequently affirmed the dismissal on September 1, 1999. *See Commonwealth v. Wright*, 747 A.2d 423 (Pa.Super.1999) (unpublished memorandum), *appeal denied*, 561 Pa. 696, 751 A.2d 190 (2000). Our Supreme Court denied allowance of appeal on February 24, 2000. *See id.*

¶ 6 Several years later, on July 15, 2006, Wright filed a motion for post-conviction DNA testing pursuant to 42 PA.CONS.STAT. ANN. § 9543.1. His motion was denied by the PCRA court on April 4, 2006. This timely appeal follows.

¶ 7 In *Commonwealth v. Williams*, 909 A.2d 383 (Pa.Super.2006), we set forth the pertinent standard and scope of review:

Our standard of review regarding a PCRA court's denial of a petition for post-conviction relief is well settled: We must examine whether the record sup-

---

**2.** 18 PA CONS.STAT.ANN. § 2502(a). Wright was sentenced to concurrent terms on the other convictions.

ports the PCRA court's determination, and whether the PCRA court's determination is free of legal error. Our scope of review is limited by the parameters of the PCRA.

*Id.,* at 385 (citations omitted).

¶ 8 Wright's motion for post-conviction DNA testing must be evaluated under 42 Pa.Cons.Stat.Ann. § 9543.1, which took effect in 2002. Section 9543.1 provides, in pertinent part, the following:

(a) **Motion.**—

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the appellant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the appellant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for the testing because his client was indigent and the court refused the request despite the client's indigency.

. . .

(c) **Requirements.**—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(2) (i) *assert the applicant's actual innocence of the offense for which the applicant was convicted;* and

(3) present a prima facie case demonstrating that the:

(i) identify of or the participation in the crime by the perpetrator was at issue in the proceedings that resulted in the applicant's conviction and sentencing; and

(ii) DNA testing of the specific evidence, assuming exculpatory results, would establish:

(A) the applicant's actual innocence of the offense for which the applicant was convicted.

. . .

42 Pa.Cons.Stat.Ann. § 9543.1 (emphasis added).

¶ 9 We have specifically explained that the *prima facie* requirement, found under § 9543.1(c)(3), and reinforced in § 9543.1(d)(2)(i), "requires an appellant to demonstrate that favorable results of the requested DNA testing *'would establish'* the appellant's actual innocence of the crime of conviction." *Commonwealth v. Heilman,* 867 A.2d 542, 547 (Pa.Super.2005) (emphasis in original), *appeal denied,* 583 Pa. 669, 876 A.2d 393 (2005). *See also Commonwealth v. Smith,* 889 A.2d 582, 584 (Pa.Super.2005), *appeal denied,* 588 Pa. 769, 905 A.2d 500 (2006) ("[T]he burden lies with the petitioner to make a *prima facie* case that favorable results from the requested DNA testing would establish his innocence.").

¶ 10 Here, the PCRA court held, relying on *Commonwealth v. Young,* 873 A.2d 720 (Pa.Super.2005), *appeal denied,* 586 Pa. 739, 891 A.2d 733 (2005), that Wright was unable to present a *prima facie* case of his actual innocence as he had confessed to raping, robbing, and murdering the victim. The PCRA court found that Wright's confession had been finally litigated, found not

to be the product of coercion, and that it was knowingly and voluntarily given.[3] *See* PCRA Court Opinion, 7/10/06, at 4–5.

¶ 11 In *Young*, this Court held that the denial of Young's motion for DNA testing under § 9543.1 was proper as he had earlier confessed to the crime, *i.e.*, murder. Although Young's confession was not presented into evidence at trial, the confession was deemed to be voluntary on direct appeal.[4] When Young then requested DNA testing pursuant to § 9543.1, we agreed with the PCRA court that Young did not meet the *prima facie* requirements of § 9543.1, which are necessary to the entitlement of DNA testing. Specifically, we concluded that his earlier confession barred him from asserting a claim of actual innocence as required pursuant to § 9543.1(C)(2)(i). We held the following:

> 3. At the conclusion of the suppression hearing, on December 17, 1992, the Honorable Eugene H. Clarke, Jr. entered the following findings of fact and conclusions of law:
>
>> 1. Defendant did knowingly and voluntarily waive his right to the assistance of counsel and his right to remain silent during his custodial interrogation. The defendant was properly warned of these rights by the interrogating officer prior to any interrogation.
>> 2. The statement given to police at the Police Administration Building was made after defendant was warned of his Miranda rights and was freely and voluntarily given.
>> 3. The statement of defendant given between 2:15 p.m. and 4:14 p.m. on October 20, 1991, and here identified as Exhibit C–45 was reduced to writing, read and signed by defendant after Miranda warnings and was by a preponderance of the evidence a product of his free will and was voluntarily and freely given.
>> 4. Although not at issue, the police did comply with the requirements of *Commonwealth v. Duncan*.
>
> Findings of Fact and Conclusions of Law Re: Defendant's Motion to Suppress Statements, filed 12/17/92, at 2–3.

Although appellant has claimed his innocence in his motion, we find that his confession to the murder bars him from asserting a claim of actual innocence for the offense for which he was convicted. While a confession, in and of itself, generally would not bar such a request, an appellant cannot assert a claim of actual innocence where, as here, the validity of the confession has been finally litigated, found not to be coerced, and was knowingly and voluntarily given.

*Id.*, at 727,[5] *citing Commonwealth v. Starr*, 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995) (holding that under the law of the case doctrine "a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in the earlier phases of the matter").

4. The PCRA Court in *Young* quoted from the decision issued on direct appeal, in pertinent part, as follows:

> No evidence can be found to suggest that appellant was subjected to physical or psychological abuse, nor were any threats or promises utilized to induce his inculpatory statement. Thus appellant's confession, when studied in the light of the *[Commonwealth v. ]Christmas[*, 502 Pa. 218, 465 A.2d 989 (1983)] standard, does not appear to have been an egregious violation of his rights. We conclude that the confession was voluntarily made.

873 A.2d at 726, *quoting Commonwealth v. Young*, 432 Pa.Super. 693, 635 A.2d 209 (1993) (unpublished memorandum, No. 3312 PHL 1992, filed August 20, 1993, at p. 7), *appeal denied*, 537 Pa. 632, 642 A.2d 485 (1994).

5. The Court went on to write, after explicating its holding, reasons why "even if" the "confession did not bar recourse pursuant to Section 9543.1, Appellant would still not be entitled to the relief requested." 873 A.2d at 727. Such a discussion, predicated by the telling phrase "even if," is obviously *obiter dicta*.

¶ 12 As the Commonwealth aptly notes in its letter brief, *see* Commonwealth's Letter Brief, at 11, Wright's failure to appeal the denial of his suppression motion causes that ruling—that Wright's confession was knowing and voluntary—to be the law of the case.[6] *See Commonwealth v. Metzer,* 430 Pa.Super. 217, 634 A.2d 228, 234 (1993) (holding that Commonwealth's failure to appeal trial court ruling excluding evidence means that on retrial such ruling is the law of the case and that such evidence remains inadmissible). *See also Morgan Guar. Trust Co. of New York v. Mowl,* 705 A.2d 923, 928 (Pa.Super.1998), *appeal denied,* 556 Pa. 693, 727 A.2d 1121 (1998); *Appeal of Clarendon v. F.W. Home Ass'n,* 167 Pa.Super. 44, 75 A.2d 171, 173–174 (1950). In other words, the validity of the confession has been finally litigated.

¶ 13 In the case *sub judice* we are confronted with a confession that has been "finally litigated, found not to be coerced, and was knowingly and voluntarily given." Accordingly, this case is directly controlled by *Young* and Wright is unable to assert his actual innocence. As such, his claim fails.

¶ 14 Order affirmed. Jurisdiction relinquished.

**6.** "The doctrine means that whatever is once irrevocably established as the controlling legal rule of decision between the same parties in the same case continues to be the law of the case." 1 Standard Pennsylvania Practice 2d § 2:253.