COMMONWEALTH of Pennsylvania, Appellee

v.

**Jamil GANDY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 17, 2012.

Filed Feb. 16, 2012.

Jamil Gandy, appellant, pro se.

George M. Green, Assistant District Attorney and William R. Toal, III, Assistant District Attorney, Media, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BENDER, J., and DONOHUE, J.

OPINION BY BENDER, J.

Appellant, Jamil Gandy, appeals *pro se* from the order entered on August 22, 2011, denying his petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541–9546. Appellant contends that his otherwise untimely PCRA petition met the timeliness exception contained in 42 Pa.C.S. § 9545(b)(iii), claiming that our Supreme Court's recent decision in *Commonwealth v. Wright*, 609 Pa. 22, 14 A.3d 798 (2011), created a new constitutional right held to apply retroactively. Because we hold that *Wright* does not create a new constitutional right, we affirm.

The factual history was outlined by the PCRA court as follows:

> On the evening of October 15, 1984, Gandy approached an acquaintance, Harold Parker, in Media and asked Parker to help him find Ms. Hynson. Parker did not know Gandy had a gun. Had Parker known Gandy had a gun, he would not have given Gandy a ride.

> For the next few hours, Parker drove Gandy to locations in Chester and Twin Oaks, but Gandy was unable to find Ms. Hynson. Gandy then directed Parker to drive to Scott Paper's foam plant in Eddystone, where Ms. Hynson worked as a security guard. When they arrived, Parker watched Gandy walk up to the guardhouse and saw a fight break out

about one minute later. Parker did not want to be "involved in things like that" and immediately drove away. He heard two shots fired as he was leaving.

Later that night, Gandy turned himself in at the Chester Police Department. He stated that he had a gun when he went to the plant; that he wrestled with Ms. Hynson; that Ms. Hynson stood up and came toward him; and that he shot her and ran away.

At the crime scene, CID Detective King collected two blood samples from nearby Ms. Hynson's head and near the guardhouse door. A police serologist testified that one blood sample was type A blood; the other was type AB.[1] Ms. Hynson's blood was type A. Since one person cannot have two blood types, it was reasonable to infer that the AB sample came from Gandy[2] during the violent struggle in the guardhouse.

---

[1] Type A blood contains antigen A, while type AB blood contains antigens A and B.

[2] Although the Commonwealth did not argue during trial that the AB sample came from Gandy, it was reasonable for the jury to infer this point from the evidence. *Cf. Commonwealth v. Gooding*, 818 A.2d 546 (Pa.Super.2003) (it is within province of jury as factfinder to resolve all issues of credibility, resolve conflicts in evidence, make reasonable inferences from the evidence, believe all, none, or some of the evidence, and ultimately adjudge appellant guilty).

Detective King observed several other blood spots on the ground outside the booth but was not able to recover samples from them.

Gandy's counsel argued that "two detectives ... testified that Jamil Gandy was not injured in any way whatsoever" when he turned himself in at the Chester police station. Tr. 514; *see also* Tr. 457–60 (testimony of Detective Tyler and Peifer that they did not observe any injuries when Gandy turned himself in, and that Gandy was not complaining of

any injuries). Moreover, Gandy's counsel contended that (a) three "pools of blood" found at the scene were unaccounted for, (b) there were two types of blood at the scene, and (c) one of the blood samples did not come from either Ms. Hynson *or* Gandy.

PCRA Court Opinion, 11/01/11, 1–3 (trial transcript citations omitted, footnotes in original).

The jury convicted Gandy of first-degree murder and possession of a firearm without a license. On March 25, 1985, he was sentenced to life imprisonment for the murder conviction, and to a concurrent term of 1—2 years' imprisonment for the firearms offense.

Gandy sought relief on direct appeal, but we affirmed Gandy's judgment of sentence on April 7, 1986. *Commonwealth v. Gandy*, 356 Pa.Super. 602, 512 A.2d 724 (1986). Our Supreme Court subsequently denied his Petition for Allowance of Appeal. *Commonwealth v. Gandy*, 412 E.D. Allocatur Docket 1986 (12/29/86).

On July 17, 1990, Gandy filed his first PCRA petition raising claims of ineffective assistance of trial counsel. Gandy was appointed counsel. On September 27, 1990, the PCRA court notified Gandy of its intent to dismiss his PCRA petition and Gandy responded to the notice.

On October 30, 1990, the PCRA Court issued an Order dismissing the petition, and a written opinion dated December 10, 1990. On May 30, 1991, we issued a Memorandum Opinion and Order affirming the dismissal of the PCRA petition, and our Supreme Court subsequently denied Gandy's Petition for Allowance of Appeal. *Commonwealth v. Gandy*, 413 Pa.Super. 638, 595 A.2d 190 (1991), *appeal denied*, 529 Pa. 631, 600 A.2d 951 (1991).

Gandy, acting *pro se*, filed his second PCRA petition and request for DNA test-

ing pursuant to 42 Pa.C.S. § 9543.1 on March 1, 2006. Counsel was again appointed. The PCRA Court denied Gandy's petition on August 6, 2006. Gandy appealed, and we affirmed in a memorandum opinion dated September 17, 2008. *Commonwealth v. Gandy*, 963 A.2d 565 (Pa.Super.2008) (unpublished memorandum) (holding Gandy could not establish a *prima facie* case for DNA testing under 42 Pa.C.S. § 9543.1(c)(3)). Gandy sought relief in a federal *habeas corpus* petition, but was ultimately unsuccessful. *Gandy v. Diguglielmo*, CIVA 09–1363, 2009 WL 3648673 (E.D.Pa. Oct. 27, 2009)

Now, in his appeal from the denial of his third PCRA petition, Appellant presents the following issue for our consideration:

Whether the PCRA court abused its discretion when it refused to formulate a remedy for the willful destruction by the prosecutor of DNA biological evidence without court approval and due notice to appellant in violation of the First, Sixth, and Fourteenth Amendments to the U.S. Constitution and the Pennsylvania Constitution Due Process and Equal Protection?

Appellant's Brief at 9.

We gather from Appellant's statement of the issue and through his argument that he is seeking a remedy for the allegedly willful destruction of potential DNA evidence, which he believes could have been useful as mitigating evidence had it been presented to the jury. Alternatively argued, such evidence could have potentially altered the defense strategy had it been made available to Appellant prior to trial.

The PCRA court concluded that the PCRA petition that is the subject of the instant appeal was properly denied as having exclusively raised claims that were previously litigated during the 2006 PCRA proceedings. PCRA Court Opinion at 1, 4. The Commonwealth endorses the PCRA court's view, but also asserts that Appellant's claims are meritless on their face, because the biological evidence sought to be tested no longer exists, a fact that appears beyond dispute.

We note that the standard of review for review of an order denying a PCRA petition is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Ragan*, 592 Pa. 217, 923 A.2d 1169, 1170 (2007). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super.2001).

As a threshold jurisdictional matter, however, the timeliness of the PCRA petition must be addressed. Even where neither party nor the PCRA court have addressed the matter, "it is well-settled that we may raise it *sua sponte* since a question of timeliness implicates the jurisdiction of our Court." *Commonwealth v. Hutchins*, 760 A.2d 50, 53 (Pa.Super.2000). 42 Pa.C.S. § 9545(b) sets forth the time limitations for filing of a PCRA petition as follows:

(b) Time for filing petition.—

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the

petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b)(1)-(2).

 Petitioners must plead and prove the applicability of one of the three exceptions to the PCRA timing requirements. *Commonwealth v. Perrin*, 947 A.2d 1284 (Pa.Super.2008); *Commonwealth v. Geer*, 936 A.2d 1075, 1078–1079 (Pa.Super.2007). "If the petition is determined to be untimely, and no exception has been pled and proven, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition." *Perrin*, 947 A.2d at 1285.

 In Appellant's *pro se* PCRA petition, he acknowledges the necessity of pleading an exception to the jurisdictional time-bar, and accordingly asserts the applicability of § 9545(b)(1)(iii) in light of our Supreme Court's recent decision in *Commonwealth v. Wright*, 609 Pa. 22, 14 A.3d 798 (2011). The elements necessary to establish a § 9545(b)(1)(iii) exception are now well established in the courts of this Commonwealth:

Subsection (iii) of Section 9545 [ (b)(1) ] has two requirements. First, it provides that the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or this preme Court of the United States or this

court after the time provided in this section. Second, it provides that the right "has been held" by "that court" to apply retroactively. Thus, a petitioner must prove that there is a "new" constitutional right and that the right "has been held" by that court to apply retroactively. The language "has been held" is in the past tense. These words mean that the action has already occurred, *i.e.,* "that court" has already held the new constitutional right to be retroactive to cases on collateral review. By employing the past tense in writing this provision, the legislature clearly intended that the right was already recognized at the time the petition was filed.

*Commonwealth v. Copenhefer*, 596 Pa. 104, 941 A.2d 646, 649–50 (2007) (citing *Commonwealth v. Abdul–Salaam*, 571 Pa. 219, 812 A.2d 497, 501 (2002)).

Our research has revealed no Supreme Court holding that establishes whether or not *Wright* creates a new constitutional right. Not surprisingly, then, we are also unaware of any Supreme Court holding that establishes whether such a right has been held to apply retroactively. We must, therefore, look to the *Wright* decision itself for an answer.

In *Wright*, our Supreme Court held "that a confession, in and of itself, is not a *per se* bar under [§ ] 9543.1(c)(3) to a convicted individual establishing a *prima facie* case that DNA testing would establish actual innocence of the crime for which he or she was convicted, even if the voluntariness of that confession has been fully and finally litigated." *Wright*, 14 A.3d at 817. *Wright* abrogated the Superior Court's prior decision in *Commonwealth v. Young*, 873 A.2d 720 (Pa.Super.2005), which had ruled that an individual was not entitled to DNA testing under § 9543.1 where he had confessed to the crime, and

the confession was determined to be voluntary. The majority in *Wright* stated:

> After conducting our own independent review, we agree with the parties and conclude that the Superior Court erred in Young by announcing such a sweeping preclusion. Correspondingly, we hold that the reliance on *Young* by the Superior Court panel below necessitates reversal. For the reasons that follow, we expressly disavow *Young* and overrule the decision of the Superior Court in the present matter.

*Wright,* 14 A.3d at 812.

The method of analysis undertaken by the *Wright* Court appears to be exclusively one of statutory interpretation:

> To resolve the question of whether a confession, the voluntariness of which has been fully and finally litigated in prior proceedings, precludes a convicted person from subsequently presenting a *prima facie* case that exculpatory results obtained from DNA testing of items of evidence would establish his or her actual innocence, requires us to interpret the relevant language of Section 9543.1. Because statutory interpretation is a matter of law, our standard of review is *de novo,* and our scope of review is plenary.
>
> . . .
>
> Our review is further governed by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 et seq., under which our paramount interpretative task is to give effect to the intent of our General Assembly in enacting the particular legislation under review. *See* 1 Pa.C.S.A. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions."); *Nationwide Ins. Co. v. Schneider,* 599 Pa. 131, 143, 960 A.2d 442, 448 (2008). Generally, the best indication of the General Assembly's intent may be found in the plain language of the statute. *Martin v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). In this regard, "it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include." *Commonwealth v. Rieck Investment Corp.,* 419 Pa. 52, 59–60, 213 A.2d 277, 282 (1965). Consequently, "[a]s a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says[;] [o]ne must also listen attentively to what it does not say." *Kmonk–Sullivan v. State Farm Mut. Auto. Ins. Co.,* 567 Pa. 514, 525, 788 A.2d 955, 962 (2001) (internal quotations omitted).

*Wright,* 14 A.3d at 814.

Evaluating the statute in question, as well as the reasoning in **Young,** the Supreme Court concluded that:

> Nowhere in subsections (c)(3)(i) or (c)(3)(ii)(A), or in any of the other provisions of Section 9543.1, did the legislature include an explicit prohibition to prevent a convicted individual who has confessed to a crime, and who otherwise meets all of the statutory requirements, from obtaining DNA testing, merely because of the existence of the confession. Neither do we perceive any reasonable reading of the entirety of the text of Section 9543.1 which would impliedly support such a restrictive construction. Consequently, absent any such express or implicit direction by the legislature, it was improper for the Superior Court to judicially engraft such a barrier to DNA testing into this statute.

*Id.* at 814—815.

Certainly it seems axiomatic now that confessions present a myriad of questions

of constitutional dimension. But the *Wright* Court was careful to distinguish its holding from those types of questions:

> The critical flaw in the Superior Court's reasoning in *Young,* and in its decision in the present matter, was its legal conclusion that a finally litigated ruling on the voluntariness of a confession was also fully and completely determinative of the factual accuracy of the confession and, thus, dispositive of the issue of actual guilt or innocence. This was improper since the issue of the voluntariness of a confession—i.e. whether it was obtained in a manner which did not violate the due process rights of the defendant under the United States and Pennsylvania Constitutions—is entirely separate from the issue of whether a defendant's admissions in the confession conclusively establish, factually, that he or she committed the acts which form the basis for his or her conviction. As these are two separate and distinct questions, the resolution of each involves fundamentally different considerations.

*Id.* at 815.

In light of the express language and reasoning of *Wright,* we hold that it does not create a new constitutional right. The decision carefully sidesteps issues of constitutional dimension, and instead issues a new rule of law in that it abrogated the *per se* bar established in *Young,* and *Wright* does so by means of statutory interpretation rather than any identifiable form of constitutional analysis. It is therefore unnecessary to determine the question of retroactivity.

■ Still, it is true that:

[T]he PCRA's one-year time bar does not apply to motions for the performance of forensic DNA testing under Section 9543.1. Rather, after DNA testing has been completed, the applicant may, within 60 days of receiving the test results, petition to the court for post-conviction relief on the basis of after-discovered evidence, an exception to the one-year statute of limitations.

*Commonwealth v. Brooks,* 875 A.2d 1141, 1146 (Pa.Super.2005).

Appellant, clearly cognizant of this "exception" to the jurisdictional bar, asserts that "[t]he present appeal before the Court regards solely the refusal of the PCRA court to issue an order to have the DNA Biological evidence that was never tested, tested." Appellant's Brief, 5. However, Appellant does not appear to dispute that the evidence in question was destroyed, as is apparent from the formulation of his "issue presented for appeal," which seeks a remedy for the destruction of evidence he wishes to have tested. He also later states that he is "requesting that a determination be made as to the reasons why the prosecutor elected to destroy the DNA evidence before going to trial and without being tested." *Id.* at 14. Still again he argues, "When the prosecutor took it upon himself to destroy the evidence in its possession without allowing testifying, the prosecutor violated Appellant's constitutional rights to due process." *Id.* at 15.

In these circumstances, Appellant is trying to invoke the DNA testing components of § 9543.1 as a jurisdictional hook in order to present his constitutional claims regarding the destruction of evidence. We have previously ruled § 9543.1 cannot be used "to raise extraneous issues not related to DNA testing in an effort to avoid the one-year time bar." *Brooks,* 875 A.2d at 1148 (Pa.Super.2005). Appellant's claims relate exclusively to the destruction of evidence that likely occurred over 25 years

**906**

ago, *not* to any recent DNA testing conducted pursuant to § 9543.1.

We, therefore, conclude that Appellant's third, *pro se* PCRA petition was untimely, and that he failed to meet an exception to the PCRA timeliness requirements. Because the PCRA court below lacked jurisdiction, it was precluded from entertaining any claim or affording Appellant any form of relief from the alleged constitutional violations.

Order Affirmed.