J-S60032-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN K. YOUNG, | : | |
| | : | |
| Appellant | : | No. 3783 EDA 2015 |

Appeal from the PCRA Order December 1, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-0323691-1975

BEFORE:     SHOGAN, OTT, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:     **FILED OCTOBER 19, 2016**

John K. Young (Appellant) appeals *pro se* from the December 1, 2015 order that dismissed without a hearing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm in part and reverse in part the order dismissing the petition; vacate Appellant's judgment of sentence; and remand for resentencing.

> At approximately 6:30 a.m. on March 11, 1975, Miss Jacqueline Mack, of 2123 Etting Terrace, Philadelphia, Pennsylvania, heard the sounds of loud screaming and footsteps coming from the house next door wherein Marlene Mapp and her family resided.  She also heard the voice of one of Mrs. Mapp's children crying out to leave his mother alone.  Miss Mack telephoned the police and then telephoned next door.  One of Mrs. Mapp's children, Larry Mapp, answered the phone and screamed his mother had been stabbed.  Miss Mack then went to the rear door of the Mapp house and pushed it open.  She was met by Larry who was covered with blood.  The police arrived and found Marlene Mapp lying wedged against her front door at the foot of the staircase leading to the second floor.  There was a

*Retired Senior Judge assigned to the Superior Court.

trail of blood from a bedroom on the second floor down to the bottom of the staircase. A woman's purse was lying open on the living room sofa with its contents strewn about. The front door was locked and entrance to the house appeared to have been effected through the rear door by means of a coat hanger being inserted through a hole in the glass of a window next to the door and so manipulated as to unlatch the door.

A post-mortem examination established Marlene Mapp died from a deep cut of the neck which severed the jugular vein and the right subclavian artery.

Larry Mapp, six years old at the time of this incident but seven at the time of trial, testified he was sleeping in the same bed as his mother when he was awakened by voices and saw a person he described as "the boy" on the bed on his knees. He identified "the boy" as [Appellant]. Larry Mapp further testified that [Appellant] told his mother to tell him to take his five-year-old sister, Chantel, and leave the room. In the course of doing so, Larry saw [Appellant] pull out a knife. When this happened, he ran downstairs to try to find a knife with which to attack the intruder, but could find none. He then ran back upstairs with his sister to the other bedroom and [Appellant] then ran downstairs and out the back door with Larry running after him. Later, he saw his mother lying against the front door. He spoke to her but there was no answer. Larry also testified he recognized the intruder as a youth he had seen hanging out clothes in the backyard of the house to the rear of his own.

In the course of their investigation, police found a black scarf with stains of human blood in the backyard of the Mapp house, and in a search of [Appellant's] residence, pursuant to a search warrant, found three butcher knives with one bearing traces of human blood, a pair of pants, a pair of shoes and a washcloth, all of which bore stains of human blood.

*Commonwealth v. Young*, 383 A.2d 899, 900 (Pa. 1978).

Appellant, who was a juvenile at the time of the murder, was *inter alia*, convicted of second-degree murder and sentenced to life imprisonment without possibility of parole. Our Supreme Court affirmed Appellant's

judgment of sentence in 1978, *id.*, and subsequent collateral attacks on that judgment were unsuccessful. *See Commonwealth v. Young*, 465 A.2d 684, 685 (Pa. Super. 1983) (affirming denial of petition filed under the Post-Conviction Hearing Act (PCHA)); *Commonwealth v. Young*, 635 A.2d 209 (Pa. Super. 1993) (unpublished memorandum) (affirming denial of second PCHA petition). Appellant later sought DNA testing under the PCRA, but his request was denied, appealed, and affirmed by this Court, *inter alia*, on the basis that Appellant's confession barred him from asserting a claim of actual innocence. *Commonwealth v. Young*, 873 A.2d 720 (Pa. Super. 2005).

On July 8, 2010, Appellant filed a PCRA petition wherein he claimed his sentence was illegal under *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010) (holding unconstitutional sentences of life imprisonment without parole for non-homicide juvenile offenders). The PCRA court did nothing. On November 16, 2011, Appellant filed a supplement to the PCRA petition seeking DNA testing based upon the fact that our Supreme Court in *Commonwealth v. Wright*, 14 A.3d 798 (Pa. 2011), overturned the 2005 *Young* decision of this Court disposing of Appellant's earlier request for DNA testing. The PCRA court did nothing. On July 16, 2012, Appellant filed another supplement to his petition citing, *inter alia*, *Miller v. Alabama*, 132 S.Ct. 2455 (2012). The PCRA court did nothing. On December 23, 2013, Appellant filed another amendment

discussing **Miller** and our Supreme Court's decision in **Commonwealth v. Cunningham**, 81 A.3d 1, 11 (Pa. 2013).

On June 12, 2014, the PCRA court finally acknowledged Appellant's filings by issuing a notice of intent to dismiss them as untimely-filed pursuant to Pa.R.Crim.P. 907. On July 1, 2014, Appellant filed objections, citing, *inter alia*, **Miller**. On December 1, 2015, upon consideration of Appellant's PCRA petition, the supplements thereto, and Appellant's response to the 907 Notice, the PCRA court dismissed Appellant's petition.[1] Appellant timely filed a notice of appeal.

The timeliness of a post-conviction petition is jurisdictional. **See**, **e.g.**, **Commonwealth v. Lewis**, 63 A.3d 1274, 1280-81 (Pa. Super. 2013) (quoting **Commonwealth v. Chester**, 895 A.2d 520, 522 (Pa. 2006)) ("[I]f a PCRA petition is untimely, neither this Court nor the [PCRA] court has jurisdiction over the petition. Without jurisdiction, we simply do not have the legal authority to address the substantive claims.").

Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment of sentence is final unless the petition alleges, and the petitioner proves,

---

[1] That Appellant's petition went unaddressed for nearly **four years** despite his repeatedly bringing it to the court's attention by filing supplements and amendments, and then another **17 months** elapsed before a final order was entered allowing Appellant to appeal to this Court, raises serious questions about whether justice is being served. There is simply no excuse for such lengthy delays.

that an exception to the time for filing the petition is met, and that the claim was raised within 60 days of the date on which it became available. 42 Pa.C.S. § 9545(b). However, "the one-year time bar proscribed under the PCRA does not apply to petitions for post-conviction DNA testing…." **Commonwealth v. Perry**, 959 A.2d 932, 938 (Pa. Super. 2008).

We begin by addressing the denial of Appellant's request for DNA testing. Such a claim is governed by 42 Pa.C.S. § 9543.1.

> The statute sets forth several threshold requirements to obtain DNA testing: (1) the evidence specified must be available for testing on the date of the motion; (2) if the evidence was discovered prior to the applicant's conviction, it was not already DNA tested because (a) technology for testing did not exist at the time of the applicant's trial; (b) the applicant's counsel did not request testing in a case that went to verdict before January 1, 1995; or (c) counsel sought funds from the court to pay for the testing because his client was indigent, and the court refused the request despite the client's indigency.

**Commonwealth v. Walsh**, 125 A.3d 1248, 1254 (Pa. Super. 2015) (quoting **Commonwealth v. Williams**, 35 A.3d 44, 49 (Pa. Super. 2011)). Further,

> The text of the statute set forth in Section 9543.1(c)(3) and reinforced in Section 9543.1(d)(2) requires the applicant to demonstrate that favorable results of the requested DNA testing would establish the applicant's actual innocence of the crime of conviction. The statutory standard to obtain testing requires more than conjecture or speculation; it demands a *prima facie* case that the DNA results, if exculpatory, would establish actual innocence.

**Id.** at 1254-55.

As noted above, the police recovered numerous blood-stained articles from Appellant's residence, as well as one article from the victim's yard, which abutted that of Appellant. At trial, the Commonwealth introduced evidence that the blood on all of the items was human; however, nothing more, such as blood type, was tested. *Young*, 873 A.2d at 727. In 2002, Appellant sought DNA testing of these articles, claiming that the results would establish that the blood was his own rather than Ms. Mapp's. *Id.* at 725. This Court affirmed the PCRA court's denial of the request, holding that Appellant's challenged-and-upheld confession barred him from asserting a claim of actual innocence. *Id.* at 727. This Court went on to state the following:

> Moreover, even if we would have found Appellant's confession did not bar recourse pursuant to Section 9543.1, Appellant would still not be entitled to the relief requested. As the PCRA court noted above, the victim's son unequivocally identified Appellant as the person who had broken into their home and who had ordered him and his little sister out of the bedroom while producing a knife and holding it toward his mother. Although Appellant challenged the credibility of Larry Mapp's testimony and his identification of Appellant as the perpetrator, substantial evidence of identification was presented to the jury for their consideration. Thus, even assuming that the DNA testing of the pants, shoes, knife and washcloth produced exculpatory results, it would not be enough to establish Appellant's actual innocence of the offense for which he was convicted.
>
> For the foregoing reasons, Appellant has failed to satisfy the requirement of 42 Pa.C.S.A. section 9543.1. Accordingly, we affirm the PCRA court's order denying Appellant's request for DNA testing.

*Id.* at 727-28.

In 2011, our Supreme Court rejected the first basis for this Court's decision, holding "a confession, in and of itself, is not a *per se* bar … to a convicted individual establishing a *prima facie* case that DNA testing would establish actual innocence of the crime for which he or she was convicted…." *Wright*, 14 A.3d at 817.

Appellant's request for DNA testing at issue in the present appeal did not attempt to set forth all of the threshold requirements of Section 9543.1 quoted above. He merely asserted that because this Court's 2005 decision had been overruled, he is entitled to the testing. Similarly, in his brief Appellant only argues, under *Wright*, that his confession is not a bar to his meeting the actual-innocence requirement for testing. Appellant's Brief at 23-30.

Such argument ignores this Court's prior ruling that the tests, even if they produced the results Appellant wanted, would not establish that he did not murder Ms. Mapp. This Court's prior even-if rejection of the merits of Appellant's request for DNA testing constitutes the law of the case, preventing us from reaching a different conclusion. *Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa. 2009). Nor has Appellant cited to a factual or legal change that would warrant our revisiting the issue. Accordingly, we affirm the PCRA court's order to the extent that it denied Appellant's request for DNA testing.

We now consider the propriety of the PCRA court's dismissal as untimely-filed of Appellant's claim for resentencing. The petition is facially untimely, as Appellant's judgment of sentence became final decades ago. However, he claims that his petition satisfies the timeliness exception codified at 42 Pa.C.S. § 9545(b)(1)(iii), for newly-recognized, retroactively-applicable constitutional rights. Specifically, Appellant asserts that the holding of the United States Supreme Court in *Miller*, that mandatory sentences of life imprisonment without possibility of parole imposed upon individuals who were juveniles at the time they committed homicides are unconstitutional, applies to him.

The PCRA court determined that Appellant did not properly invoke that exception because our Supreme Court held in *Cunningham* that *Miller* does not apply retroactively. However, while this appeal was pending, the United States Supreme Court in *Montgomery v. Louisiana*, 136 S.Ct. 718 (2016), overruled *Cunningham* by holding that *Miller* announced a new substantive rule of law which does apply retroactively. Thereafter, this Court held that *Montgomery* renders "retroactivity under *Miller* effective as of the date of the *Miller* decision." *Commonwealth v. Secreti*, 134 A.3d 77, 82 (Pa. Super. 2016).

Under *Secreti*, Appellant's PCRA petition meets the timeliness exception provided by 42 Pa.C.S. § 9545(b)(1)(iii). Under *Miller*, *Montgomery*, and *Secreti*, Appellant is entitled to PCRA relief in the form

of resentencing.[2,3]   Accordingly, the order is reversed to the extent that it denied Appellant's request for resentencing.

Order affirmed in part and reversed in part.   Judgment of sentence vacated.  Case remanded for resentencing.[4]  Jurisdiction relinquished.

---

[2] The Commonwealth agrees that Appellant is entitled to resentencing under **Montgomery**.  Commonwealth's Brief at 7.

[3] The court may not resentence Appellant to life imprisonment without the possibility of parole without unless it considers the appropriate age-related factors:

> at a minimum [the sentencing court] should consider a juvenile's age at the time of the offense, his diminished culpability and capacity for change, the circumstances of the crime, the extent of his participation in the crime, his family, home and neighborhood environment, his emotional maturity and development, the extent that familial and/or peer pressure may have affected him, his past exposure to violence, his drug and alcohol history, his ability to deal with the police, his capacity to assist his attorney, his mental health history, and his potential for rehabilitation.

**Commonwealth v. Batts**, 66 A.3d 286, 297 (Pa. 2013) (quoting **Commonwealth v. Knox**, 50 A.3d 732, 745 (Pa. Super. 2012)).

[4] Appellant is entitled to the assistance of counsel for his resentencing proceedings. **Com. ex rel. Wright v. Cavell**, 220 A.2d 611, 614 (Pa. 1966) (noting that sentencing is a critical stage of a criminal proceeding at which a criminal defendant has a constitutional right to counsel).  According to the Commonwealth, the Defender Association of Philadelphia was appointed to represent Appellant on May 25, 2016, for **Montgomery** purposes. Commonwealth's Brief at 5.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 10/19/2016