J-S01019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TIMOTHY JAMES BRUNNER | |
| Appellant | No. 663 WDA 2014 |

Appeal from the PCRA Order February 19, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0013465-2009

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 30, 2015**

Timothy Brunner ("Appellant") appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The trial court opinion sets forth the relevant facts and procedural history of the case.  **See** PCRA Court Pa.R.A.P. 1925(a) Opinion, September 12, 2014 ("1925(a) Opinion"), pp. 1-8.  Therefore, we have no need to restate them.

Appellant raises one issue for our review:

I.  Did the lower court abuse its discretion in dismissing the PCRA petition without a hearing and allowing counsel leave to withdraw, insofar as [Appellant] averred that his waiver of his

_____

[1] 42 Pa.C.S. §§ 9541-9546.

right to call character witnesses was involuntary and unknowing because trial counsel was ineffective for failing to contact, interview and prepare the character witnesses that [Appellant] identified to counsel as being willing to testify on his behalf?

Appellant's Brief, p. 4 (all capitals removed).

In reviewing an order denying PCRA relief, our well-settled standard of review is "to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-192 (Pa.Super.2013) (internal quotations and citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Edward J. Borkowski, we conclude Appellant's issue merits no relief. The PCRA court opinion discusses and properly disposes of the question presented. **See** 1925(a) Opinion, pp. 8-13 (finding: trial counsel not ineffective for failing to call character witnesses where Appellant failed to illustrate prejudice – the alleged witnesses' testimony would not have negated the substantial evidence of Appellant's guilt; the trial court conducted a thorough oral colloquy with Appellant regarding his right to testify and call character witnesses during which Appellant acknowledged that he understood his right to call character witnesses, discussed the right with his attorney, and that he understood that the decision whether to call character witnesses was his alone before knowingly, voluntarily, and intelligently waiving his right to call

character witnesses). Accordingly, we affirm on the basis of the PCRA court's opinion.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2015

FILED

2014 SEP 12 PM 1:42

DEPT OF COURT RECORDS
CRIMINAL DIVISION
ALLEGHENY COUNTY PA

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA,
APPELLEE

CC 200913465

v.

TIMOTHY BRUNNER,

663 WDA 2014

APPELLANT

**OPINION**

FILED BY:
THE HONORABLE
EDWARD J. BORKOWSKI

COPIES TO:
Suzanne Swan, Esq.
428 Forbes Avenue
Suite 1710 Lawyers Building
Pittsburgh, PA 15219

Michael W. Streily, Esq.
Office of the District Attorney
401 County Courthouse
436 Grant Street
Pittsburgh, PA 15219

**APPENDIX A**

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA, APPELLEE

CC 200913465

v.

TIMOTHY BRUNNER, APPELLANT.

OPINION

BORKOWSKI, J.

## PROCEDURAL HISTORY

Appellant, Timothy Brunner, was charged by criminal information (CC 200913465) with one count of criminal homicide,[1] one count of kidnapping,[2] one count of abuse of corpse,[3] and one count of criminal conspiracy.[4]

Appellant proceeded to a jury trial on April 4, 2010, with codefendant Kristopher Benjamin, at the conclusion of which Appellant was found guilty of second degree murder, kidnapping, abuse of corpse, and criminal conspiracy.

---

[1] 18 Pa. C.S. § 2502.
[2] 18 Pa. C.S. § 2901.
[3] 18 Pa. C.S. § 5510.
[4] 18 Pa. C.S. § 903.

2

On July 7, 2010, Appellant was sentenced by the Trial Court as follows:

Count one: second degree murder – life imprisonment without the possibility of parole;

Count two: kidnapping – four to eight years incarceration to be served consecutive to the period of incarceration imposed at count one;

Count three: abuse of corpse – one to two years incarceration to be served consecutive to the period of incarceration imposed at count two;

Count four: criminal conspiracy – four to eight years incarceration to be served consecutive to the period of incarceration imposed at count three.

Appellant filed a post sentence motion on July 13, 2010, which was denied by the Trial Court on August 20, 2010. Appellant filed a timely notice of appeal on September 17, 2010.

On January 18, 2013, the Superior Court vacated Appellant's judgment of sentence and remanded to the Trial Court for resentencing as counts one and two merged. Appellant filed a Petition for Allowance of Appeal to the Supreme Court on February 15, 2013, which was denied on July 17, 2013. On September 5, 2013, Appellant was resentenced by the Trial Court as follows:

Count one: second degree murder – life imprisonment without the possibility of parole;

Count two: kidnapping – merged with count one;

Count three: abuse of corpse – one to two years incarceration to be served consecutive to the period of incarceration imposed at count one;

Count four: criminal conspiracy – four to eight years incarceration to be served consecutive to the period of incarceration imposed at count three.

On October 25, 2013, Appellant filed a *pro se* PCRA petition. The Trial Court appointed counsel on October 29, 2013, and appointed counsel filed a motion to withdraw pursuant to *Turner-Finely* on January 28, 2014. On January 30, 2014, the Trial Court granted counsel's motion to withdraw and filed its notice of intent to dismiss for the reasons stated in counsel's *Turner-Finley* letter. On February 19, 2014, the Trial Court denied Appellant's PCRA petition.

This timely appeal follows.

## STATEMENT OF ERRORS ON APPEAL

Appellant raises the following issues on appeal, and they are set forth exactly as Appellant framed them:

A. The lower court abused its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition alleging trial counsel's ineffectiveness without a hearing, where the witnesses Mr. Brunner sought to present at his trial, but whom counsel failed to contact, interview and call to the stand, would have given testimony that would have raised a reasonable doubt as to Mr. Brunner's culpability, particularly as to the degree of homicide charged.

B. The lower court abused its discretion in finding no merit to the claims raised in the PCRA petition, and denying the petition alleging trial counsel's ineffectiveness without a hearing, insofar as Mr. Brunner claimed in his petition that his waiver of his right to

4

call character witnesses was involuntary and unintelligent because counsel failed to contact, interview and prepare the character witnesses Mr. Brunner identified to counsel as being willing to testify on his behalf.

## FINDINGS OF FACT

The facts of the case have previously been summarized as follows:

In the early summer of 2009 Amy Kucsmas (victim) was actively involved in daily drug seeking behavior in the Mt. Oliver and Carrick section of Allegheny County. (T.T. 206-208, 223, 245-246)[5] In late June or early July Kucsmas spent several days in the apartment of Timothy Brunner. (T.T. 283, 384-385, 738, 813-816) Brunner's residence was apartment number two (2) of a four (4) unit building located in Mt. Oliver, and at that time he was residing there with his girlfriend, Ceira Brown. (T.T. 280-281) Kristopher Benjamin was a friend and former co-worker of Brunner and lived in that same apartment building – apartment number four (4), which was located above Brunner's apartment. (T.T. 281-282, 679, 774-775, 809) Shortly after Kucsmas began staying at Brunner's apartment she "disappeared", taking approximately $200 of Brunner's money as well as his photo identification card (ID). (T.T. 282, 385-386, 818)

In the evening of July 11, 2009 Brunner, Benjamin and Brown went to the Hazelwood section of the City of Pittsburgh. In the early morning hours of July 12th they were returning to their Mt. Oliver apartment building when Benjamin saw Kucsmas walking along Brownsville Road in the Carrick section of the city. (T.T. 287, 342) They were traveling in a pick-up truck driven by Benjamin that belonged to a neighbor James House. (T.T. 285) Upon observing Kucsmas, Benjamin stated, "Fucking Amy", and pulled the truck over. (T.T. 287, 343) Brunner and Benjamin got out of the truck and both men angrily confronted Kucsmas about the stolen money and ID. Kucsmas denied taking the money and eventually became so frightened during the confrontation that she urinated on herself. (T.T. 209-216, 287-292, 387) Brunner took Kucsmas' purse and searched

---

[5] The designation "T.T." followed by numerals refers to Trial Transcript of April 4-14, 2010, which is comprised of two (2) volumes.

through it until he found the ID that had been stolen. (T.T. 213, 290, 347, 387-388)

Once Brunner discovered his ID, he and Benjamin told Kucsmas that she was going with them, and they began pulling her toward the truck. (T.T. 214) Kucsmas initially resisted, but Brunner assured her that everything would be okay and that she should come home with them; Kucsmas ceased her resistant and got into the truck, followed by Brunner and Benjamin. (T.T. 214, 291)

Benjamin drove to an isolated and hilly area of a nearby park where Kucsmas was ordered out of the truck. (T.T. 294, 394) Brunner and Benjamin again angrily confronted Kucsmas about the money and repayment, threatening to throw her over the hill. (T.T. 295-296, 397-401) Kucsmas was scared and crying, assuring the men that she would pay the money back. (T.T. 296-297) Kucsmas was ordered back into the truck whereupon they drove back to their apartment building. (T.T. 298-299)

Once there Brown was ordered by Brunner to take Kucsmas by the hand to prevent her from fleeing, and Kucsmas was escorted to Brunner's apartment by Brunner, Benjamin, and Brown. (T.T. 301) Once in the living room, Benjamin behan yelling at Kucsmas about the money and made her take off her clothes whereupon he retrieved $60 from her "private area", which in turn was given to Brunner. (T.T. 413, 425-427) Brunner, now armed with a handgun, and Benjamin begin to beat and yell at Kucsmas. (T.T. 304, 415, 845-849) During this time Brunner cocked the weapon and fired a shot into the floor of the apartment. (T.T. 304, 415) Brown retreated to her bedroom, but heard Brunner and Benjamin continue the beating, as well as Kucsmas pleading with the two men to stop. (T.T. 306, 845-848)

Eventually the beating stopped and Kucsmas was ordered to go to the bathroom and shower. (T.T. 307, 849) While Kucsmas was in the bathroom Brunner and Benjamin had a discussion regarding the serious nature of the injuries they had inflicted on her, and they came to an agreement that she could not leave the apartment because of that. (T.T. 310, 418, 852)

When Kucsmas finished showering Brown witnessed Brunner go into the bathroom and help Kucsmas out of the shower. (T.T. 311) As Kucsmas began to walk out of the bathroom Brown saw Brunner put his arm around her neck from behind, and Benjamin approach her from the front. (T.T. 311, 327, 855) Brown then put her head under the covers of her bed, but she heard Kucsmas struggling and gasping

6

for air. (T.T. 311) Kucsmas was punched in the head, which knocked her to the bathroom floor. As she lay there her chest was stomped on, and bloody foam oozed out of her mouth and nose. (T.T. 855) When the struggling and gasping stopped, Brown heard Brunner remark to Benjamin, "she fought hard". (T.T. 311, 368) Brown took her head out from under the covers and saw Kucsmas laying motionless on the bathroom floor with Brunner and Benjamin standing around her (T.T. 312) Brunner and Benjamin picked Kucsmas up and laid her on the floor in front of Brown's bed. (T.T. 313) Brown was ordered to go outside and make certain that no one was around. (T.T. 313)

Brunner went to the basement of the building and returned with a roll of carpet. (T.T. 558-560, 857-862) Brunner and Benjamin rolled Kucsmas' body in the carpet and placed her in the back of the pick-up truck. (T.T. 865-868) At Benjamin's suggestion they then drove to Hunter Park in Wilkinsburg Borough where the body was left in a weeded/wooded area. (T.T. 868) Benjamin was familiar with this area because he grew up nearby.

When Brunner returned to his apartment he awakened Brown and told her that they had left Kucsmas behind a dumpster, and he planned to go back and burn the body. (T.T. 317, 319) Brown was instructed to clean up some blood spots on the living room carpet, as well as some pieces of cut carpet that Kucsmas' body had been wrapped in. (T.T. 317-318, 419-420) Brunner instructed Brown that if she were ever questioned by the police, that she was to acknowledge the confrontation with Kucsmas on the street and the return with her to the apartment building, but to inform the police that upon their return they went their separate ways and Kucsmas never went into Brunner's apartment. (T.T. 324)

On July 23, 2009 a tree cutting crew was dumping wood chips at Hunter Park, when they discovered the carpet and partially decomposed body of Amy Kucsmas dumped by Brunner and Benjamin eleven (11) days earlier. (T.T. 71-73, 89, 96)

The medical examiner was not able to determine the exact cause of death due to the advanced stage of decomposition, however there were multiple areas of blunt force trauma to the body including broken ribs and head trauma. (T.T. 140-142) Given all the circumstances presented, including the trauma to the body and where and how the body was found, the pathologist concluded that the manner of death was homicide. (T.T. 141-146, 167)

7

Superior Court Memorandum Opinion, January 18, 2013, pp. 1-4, quoting Trial Court Opinion, 1/20/12, at 3-8.

## DISCUSSION

An appellate court's role in reviewing PCRA appeals is "limited to determining whether the findings of the PCRA court are supported by the record and free from legal error." *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009). The scope of review is limited to the PCRA court's findings and the evidence of record, which are to be viewed in the light most favorable to the Commonwealth. *Commonwealth v. Koehler*, 36 A.3d 121, 131 (Pa. 2012). A denial will not be disturbed unless it is found that the certified record does not support the PCRA court's findings. *Commonwealth v. Gandy*, 38 A.3d 899, 902 Pa. Super. 2012). The law surrounding dismissing a PCRA Petition without a hearing has been stated thusly:

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. We stress that an evidentiary hearing is not meant to function as a fishing expedition for any possible evidence that may support some speculative claim of ineffectiveness.

8

*Commonwealth v. Roney*, 79 A.3d 595, 604-605 (Pa. 2013) (citations and quotations omitted).

I.

Appellant first claims that the PCRA Court erred in denying his claim of ineffective assistance of counsel for failing to call character witnesses based on the argument that their testimony would have raised a reasonable doubt as to culpability and the degree of homicide charged. This claim is without merit.

The standard of review for ineffective assistance of counsel claims is well settled:

> In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective. To overcome the presumption of effectiveness, Appellant must establish three factors: first that the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced. Counsel's assistance is deemed constitutionally effective once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test.

*Commonwealth v. Rolan*, 964 A.2d 398, 406 (Pa. Super. 2008) (citations and quotations omitted). When the claim of ineffective assistance of counsel is based on the failure to call a potential witness, petitioner must establish that: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the

witness was so prejudicial as to have denied the defendant a fair trial." *Commonwealth v. Sneed*, 45 A.3d 1096, 1108-1109 (Pa. 2012). Accordingly, "counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense." *Sneed*, 45 A.3d at 1109.

Here, the jury heard substantial evidence connecting Appellant to the kidnapping and murder of Amy Kucsmas, as well as the subsequent attempted cover-up. This evidence included the testimony of Appellant and Appellant's girlfriend. While Appellant had several witnesses available to testify to his own good character and the bad character of his co-defendant, none of these witnesses would have negated the substantial evidence implicating Appellant. Appellant failed to show that the witnesses would have been helpful to the defense given the substantial amount of evidence against Appellant and the heinous nature of the crimes.

Upon reviewing the record, the PCRA Court found that there were no genuine issues of material fact, that Petitioner was not entitled to post-conviction relief as he had failed to establish prejudice, and no legitimate purpose would be served by a further proceeding. The PCRA Court properly dismissed Appellant's PCRA claim without a hearing. *See Commonwealth v. Pirela*, 726 A.2d 1026, 1035 (Pa. 1999) (defendant failed to establish prejudice for counsel's failure to call

10

character witnesses during the sentencing hearing, and evidence of a troubled past might be perceived as an attempt to trivialize the gravity of the crime).

Appellant's claim is without merit.

## II.

Appellant alleges in his second claim that the PCRA Court erred in denying his claim of ineffective assistance of counsel based on the argument that Appellant's waiver of his right to call character witnesses was involuntary and unintelligent. This claim is without merit.

Defendants have the right to call character witnesses in their defense at trial, but may choose to waive that right as follows:

> Where the defendant chooses not to call character witnesses, the trial judge shall ascertain from the defendant whether this is a knowing, voluntary and intelligent waiver. A waiver colloquy, on the record, should be conducted by defense counsel, but may be supplemented by the Court and/or the Attorney for the Commonwealth. In a jury trial, the colloquy shall be held outside the presence of the jury before the defense rests its case.

All. C. R. Crim. P. 602.2. Appellant's claim that he involuntarily waived his right to call character witnesses, couched in an ineffective assistance of counsel claim, is examined as follows:

> When a presumptively-valid waiver is collaterally attacked under the guise of ineffectiveness of counsel, it must be analyzed like any other ineffectiveness claim. Such an inquiry is not resolved by the mere absence of an oral waiver colloquy; instead, the analysis must focus on the totality of relevant circumstances. Those circumstances include the defendant's

11

knowledge of and experience with jury trials, his explicit written waiver (if any), and the content of relevant off-the-record discussions counsel had with his client.

*Commonwealth v. Birdsong*, 24 A.3d 319, 339 (Pa. 2011) (in the context of a jury waiver colloquy claim). In order to prevail, Appellant must demonstrate that: (1) he did not understand the right that he was waiving; (2) that counsel caused the failure to understand; and, (3) that but for counsel's ineffectiveness, Appellant would not have waived that right. *Birdsong*, 24 A.3d at 340.

Appellant's claim here is based on the assertion that counsel's ineffective assistance of counsel in failing to call character witnesses caused Appellant to involuntarily waive his right to call character witnesses. As noted above, counsel was not ineffective for failing to call character witnesses. *See supra* pp. 9-10. Further, Appellant's claim that his waiver was involuntary is belied by the record. Following the close of the Commonwealth's case, the Trial Court conducted a thorough oral colloquy with Appellant and his co-defendant regarding their rights to testify and to call character witnesses. (T.T. 665-671). Appellant acknowledged that he understood his right to call character witnesses, that he had discussed it with his attorney, and that it was Appellant's decision alone whether to call character witnesses. (T.T. 669-670). Thus, Appellant stated under oath that it was his decision not to call character witnesses, and that he had not been threatened or promised anything in exchange for making that decision. (T.T. 670-671). Trial

12

counsel William Brennan further stated that he believed Appellant was making a knowing, intelligent, voluntary, and fully-informed decision to not call character witnesses. (T.T. 671). Given the oral colloquy, the demeanor of Appellant, and his concurrent decision to testify in his own defense, the Trial Court found that Appellant had made a knowing, voluntary, intelligent, and fully informed decision not to call character witnesses. The PCRA Court properly denied Appellant's claim that his waiver was involuntary. *See Birdsong*, 24 A.3d at 341 (defendant failed to establish that ineffective assistance of counsel caused him to waive his right to a jury based on a bald allegation of prejudice).

Appellant's claim is without merit.

## CONCLUSION

Based upon the foregoing, the judgment of sentence imposed by this Court should be affirmed.

By the Court,

SEPTEMBER 12, 2014
_____
Date

_____
Edward J. Borkowski

13