J-A26034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| EMMETT M. LOCKHART | |
| Appellant | No. 110 MDA 2015 |

Appeal from the PCRA Order Entered on December 23, 2014
In the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-0001591-2000

BEFORE: FORD ELLIOTT, P.J.E., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                    **FILED DECEMBER 07, 2015**

Emmett Lockhart appeals the December 23, 2014 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. Lockhart's petition was untimely under the PCRA's jurisdictional time limits. Consequently, we affirm.[1]

_____

[*]      Retired Senior Judge assigned to the Superior Court.

[1]      The PCRA court dismissed Lockhart's petition on the merits, implicitly determining that Lockhart had successfully pleaded and proved that the newly-discovered fact exception to the PCRA's time limits should apply to his case, conferring jurisdiction over the petition upon the PCRA court. However, "[e]ven where neither party nor the PCRA court have addressed [jurisdiction], it is well-settled that we may raise it *sua sponte* since a question of timeliness implicates the jurisdiction of our Court." **Commonwealth v. Gandy**, 38 A.3d 899, 902 (Pa. Super. 2012) (internal quotation marks omitted). Because the PCRA court lacked jurisdiction to consider the merits of Lockhart's petition, it should have dismissed Lockhart's petition upon that basis.

We previously have provided the following abridged factual history of this case:

> On the evening of April 24, 2000, a Shippensburg University student named Sydney Bull left a study group meeting sometime between 9:00 and 9:45 p.m. with the stated intention of returning. His charred body was discovered several hours later when members of the South Newton Township Fire Company responded to a forest fire alarm call. Traces of gasoline were found in soil samples, leaves, and other debris taken from the area where the body was found. An autopsy revealed that Mr. Bull was blasted in the face with a shotgun and killed before his body was set on fire.
>
> The police investigation eventually focused on [Lockhart], Dontae Chambers, and Matthew Norris. A jury found Chambers guilty of second-degree murder and the predicate offenses of kidnapping and robbery. In a separate proceeding [that occurred several months before Chambers' trial, Lockhart] and Norris were tried jointly before a jury . . . . [T]he jury found [Lockhart] guilty of first-degree murder, kidnapping, arson, robbery, theft by unlawful taking, abuse of corpse, and five counts of criminal conspiracy . . . .[2] On July 23, 2001, the trial court sentenced [Lockhart] to life imprisonment with no possibility of parole and also directed [Lockhart] to serve a concurrent aggregate term of ten to twenty years['] incarceration on the remaining counts.

*Commonwealth v. Lockhart*, 484 MDA 2002, slip op. at 1-2 (Pa. Super. 2003) (unpublished memorandum).

Lockhart then filed post-sentence motions, which were denied. He filed a direct appeal to the this Court. A panel of this Court affirmed Lockhart's judgment of sentence on October 7, 2003. Lockhart then filed a

---

2  *See* 18 Pa.C.S. §§ 2502(a), 2901, 3301, 3701, 3921, 5510, and 903, respectively.

timely first PCRA petition. On January 13, 2005, the PCRA court granted Lockhart leave to file a petition for allowance of appeal *nunc pro tunc* to the Supreme Court. All remaining claims were denied. Lockhart filed a petition for allowance of appeal, and, on August 1, 2005, the Pennsylvania Supreme Court denied review of the appeal. ***Commonwealth v. Lockhart***, 880 A.2d 1237 (Pa. 2005) (*per curiam*).

On May 18, 2014, Lockhart filed the instant PCRA petition on the basis of newly-discovered facts, alleging that he had discovered a previously unknown and unavailable witness whose testimony would have contradicted that of the prosecution's lead witness, co-defendant Chambers.[3] On December 18, 2014, immediately following a hearing, the PCRA court denied Lockhart's request for relief, specifically citing the court's determination that the new witness was not credible. Notes of P.C.R.A. Testimony ("N.P.T."), 12/18/2014, at 75-76.

On January 15, 2015, Lockhart timely filed a notice of appeal of the PCRA court's ruling. On January 16, 2015, the PCRA court directed Lockhart to file a concise statement of errors complained of on appeal pursuant to

_____

[3] Actually, the new witness' testimony would have contradicted Chambers' testimony on direct examination, which directly implicated Lockhart in the murder, but would have corroborated Chambers' recantation of that testimony during cross-examination, supporting Chambers' contention that he was **not** a witness to Bull's murder. That is to say, in effect, the new witness' testimony would, at best, have provided support for one of two inconsistent accounts of events that Chambers offered the jury at trial.

Pa.R.A.P. 1925(b). Lockhart timely complied on February 4, 2015. On April 30, 2015, the PCRA court filed a Rule 1925(a) opinion. Therein, the court explained, as it had done at the conclusion of the hearing, that it found the new witness' testimony incredible. It further added that the testimony in question would have served only to impeach Chambers' trial testimony, and consequently could not, without more, justify granting Lockhart a new trial. *See* Trial Court Opinion ("T.C.O."), 4/30/2015, at 3-4.

Lockhart raises the following issue on appeal:

> Whether a PCRA Court has abused its discretion when it dismisses a PCRA petition for relief[] on the basis of witness credibility alone, thereby preventing compelling evidence of innocence from reaching a jury, where the four (4) prongs of after-discovered evidence . . . have not been met, the witness in question is an air traffic controller responsible for thousands of lives daily, and is an [h]onorably discharged veteran of the United States Air Force, with two (2) [c]ommendation medals, and where there was no evidence of untruthfulness in the witness' testimony[?]

Brief for Lockhart at 4.

Well-established principles govern our review of an order denying post-conviction relief:

> Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

*Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010) (citations omitted).

It is well-established that the PCRA time limits are jurisdictional, and are meant to be both mandatory and applied strictly by the courts to all PCRA petitions, regardless of the potential merit of the claims asserted. *Commonwealth v. Leggett*, 16 A.3d 1144, 1145 (Pa. Super. 2011); *Commonwealth v. Murray*, 753 A.2d 201, 202-03 (Pa. 2000). "[N]o court may properly disregard or alter [these filing requirements] in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner." *Murray*, 753 A.2d at 203; *see Commonwealth v. Gamboa-Taylor*, 753 A.2d 780, 783 (Pa. 2000).

Despite facial untimeliness, a tardy PCRA petition nonetheless will be considered timely if (but only if) the petitioner pleads and proves one of the three exceptions to the one-year time limit enumerated in subsection 9545(b) of the PCRA, which provide as follows:

(1) Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

(i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

(ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii)      the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

(2) Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b).

A judgment of sentence "becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review."  42 Pa.C.S. § 9545(b)(3).  Lockhart's judgment of sentence became final on October 31, 2005.[4]  Thus, the deadline for Lockhart to file a timely PCRA petition was October 31, 2006.  Lockhart filed the instant PCRA petition on June 4, 2014.  Thus, Lockhart's instant petition is facially untimely under the PCRA.

Lockhart does not dispute this fact.  Instead, he invokes the newly-discovered fact exception to the PCRA's time limit set forth in subsection 9545(b)(1)(ii), contending that the new facts in question were unknown to

_____

[4]      The Pennsylvania Supreme Court denied Lockhart's petition for allowance of appeal on August 1, 2005.  As of that date, he had ninety days to seek a writ of *certiorari* from the United States Supreme Court, which deadline fell on October 30, 2005.  Because that was a Sunday, October 31, 2005 was the deadline for Lockhart to petition for a writ of *certiorari*.  **See** U.S. Sup. Ct. R. 13.  Because he did not do so, his judgment of sentence became final on that date.

him at the time of trial; that he could not have ascertained them before April 20, 2014; and that he filed the instant PCRA petition within sixty days of when he learned of the new facts.[5]

The newly-discovered fact in question is embodied in a sworn affidavit offered by Michelle Greer. At the time of the murder in question, Greer was married to Joseph Brenize. In her affidavit, she asserts that, on the night of the murder, she and Brenize (collectively, "the Brenizes") hosted a two-month wedding "anniversary" party, and that she remembers that Chambers was present at the party. Consequently, he could not simultaneously have been at the scene of the murder. Were this the case, it would support Chambers' recantation testimony during Lockhart's trial to the effect that he was not present at the scene of the murder (and thus, knew nothing of who was there or what they did), and that the elaborate, self-incriminating, contrary account that he provided to investigators (and again during his direct examination at trial), which evidently was entirely consistent with the physical evidence, was in fact a fabrication that he offered in an effort to

---

[5] Specifically, Lockhart contends that a colleague of his brother, Shakhir Lockhart, alerted Shakhir on April 18, 2014, to newspaper article indicating that Norris had filed a PCRA petition based upon the testimony of a then unidentified witness that would contradict Chambers' incriminating account of events; that Shakhir, in turn, informed Lockhart about the article during a prison visit on April 20, 2014; and that Lockhart received a clipping of the article, which had been mailed by Shakhir, on April 24, 2014, coincidentally exactly fourteen years after the murder. *See Pro Se* PCRA Petition at 2 ¶¶ 5-7.

appease investigators. In her affidavit, Greer also asserts that shortly after the events in question, and before any of the defendants' trials, she enlisted in the United States Air Force, and successfully sought postings a great distance from Shippensburg, eventually arriving at Panama City, Florida, where she still lived at the time of the PCRA hearing.

Greer attests that she never was contacted by investigators or attorneys associated with either of the trials spawned by the murder of Sydney Bull. Indeed, having already left Shippensburg while the investigation of Bull's murder was ongoing, she claims to have been wholly unaware of any trial. Instead, she claims that it was only in 2013, when she was contacted via Facebook by Norris' sister, that she heard of Norris', Lockhart's, and Chambers', convictions for Bull's murder.[6] Norris' sister

_____

[6] Somewhat supporting the PCRA court's determination that Greer's testimony at the PCRA hearing was less than convincing, her attempt during cross-examination to establish the chronology regarding her establishment of a Facebook account, Norris' sister's unsolicited effort to reach out to Greer through that account, and the events that followed, including when she first contacted Norris in prison to discuss with him her recollection of the evening of April 24, 2000, revealed several inconsistencies. For example, Greer testified that she established the account a year or two before Norris contacted her. However, defense counsel presented her with a document providing the "born-on date" for Norris' account, which indicated that she had established it in September 30, 2013. Her notarized affidavit was dated December 13, 2013, approximately six weeks later. However, she also testified that, before preparing a notarized affidavit, she had discussions with Norris and, on at least two occasions, sent him versions of her affidavit that were **not** notarized, each of which was returned to her because she failed to address the post in compliance with prison requirements—and only thereafter did she have her affidavit notarized and successfully transmit it to Norris. N.P.T. at 30-35. Although the matter is not developed at length by

*(Footnote Continued Next Page)*

allegedly asked whether Greer would be willing to provide Norris, who was working up his own PCRA petition, with a full accounting of Greer's recollections from the night of the murder. She agreed to speak with Norris, who ultimately convinced her to prepare the notarized statement. She did so and had it notarized on December 13, 2013.[7]

Lockhart alleges that he could not have learned of Greer's account any sooner than he did because only upon the publication of the newspaper article concerning Norris' conviction did he have any reason to be aware of Greer or her potential testimony. Brief for Lockhart at 19. However, even accepting that at face value, Lockhart's petition was not filed within sixty days of that date. Rather, he satisfies the sixty-day requirement in subsection 9545(b)(2) only if he is granted the benefit of his assertion that he could not be aware of the article and its indication that a new witness had emerged until his brother brought it to his attention, approximately two months after the article ran on February 11, 2014.

*(Footnote Continued)* ───────────────

either party or the PCRA court, this timeline, as related by Greer, simply does not add up.

[7] Although it mattered more to the PCRA court's merits review—and specifically its assessment of Greer's credibility—than it does to our jurisdictional ruling, we find it noteworthy that it emerged at the PCRA hearing that during or in the wake of Greer's initial conversations with Norris, she and Norris became involved in something resembling a romantic relationship. *See* N.P.T. at 35-36. The trial court treated this as a fact that undermined Greer's credibility. *See* T.C.O. at 3 ("When [Greer] conceded on cross-examination that she was currently, and had been for some time, in a romantic relationship with Norris, her credibility was destroyed.").

Before reviewing the merits of his claim, we first must ascertain whether Lockhart has successfully pleaded and proved the newly-discovered fact exception. To gain the benefit of that exception, the petitioner must prove that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." 42 Pa.C.S. § 9545(b)(1)(ii). Additionally, the petitioner must demonstrate that the petition has been filed within sixty days after the date the claim could have been presented, *i.e.*, when he learned of the evidence in question. ***See*** 42 Pa.C.S. § 9545(b)(2).

The newly-discovered fact timeliness exception is distinct from the newly-discovered evidence basis for relief stated in 42 Pa.C.S. § 9543. To be eligible for relief under section 9543, the "petitioner must plead and prove by a preponderance of the evidence . . . [t]hat the conviction or sentence resulted from . . . the unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543. Conversely, the newly-discovered fact exception set forth in subsection 9545(b)(1)(ii) "does not require any merits analysis of the underlying claim. Rather, the exception merely requires that the 'facts' upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence." ***Commonwealth v. Bennett***, 930 A.2d 1264, 1271 (Pa. 2007) (quotations and citations omitted). In other words, "[a] petitioner must clear the first hurdle, the

- 10 -

exception to the PCRA time limit . . ., in order to obtain review on the merits" under section 9543. ***Commonwealth v. Soto***, 983 A.2d 212, 215 n.6 (Pa. Super. 2009).

While Lockhart may have filed his petition within the sixty days of the time he first learned of Greer's potentially exculpatory evidence, thereby satisfying subsection 9545(b)(2), the record discloses an absence of evidence that Lockhart could not have learned of Greer many years sooner than he did through the exercise of due diligence. To begin, a number of guests were present at the Brenizes' April 24, 2000 party. In her affidavit, Greer names a total of nine in attendance, including herself. At least one of the partygoers testified at Lockhart's trial. Specifically, Brenize testified as a witness for the prosecution. ***See*** Notes of Trial Testimony Vol. 1 ("N.T.T.1"), 5/3/2001, at 56-98. However, Lockhart asserts that because information about the party was not elicited at his trial, from Brenize or otherwise, he could not be expected to have uncovered the prospect that Chambers was at the party either before his trial or at any time earlier than when he finally did, over a decade later. Lockhart asserts that he "didn't know about Michelle Greer at the time. And they had no realistic way to find out about her." Brief for Lockhart at 19. Notably, Brenize mentioned Greer, whom he identified as his wife, during his testimony at Lockhart's trial, albeit it in an unrelated connection. N.T.T.1 at 85. Thus, at a minimum, it is unrealistic to maintain that Lockhart did not know that she existed and was Brenize's spouse.

- 11 -

Lockhart also asserts that in the immediate wake of his trial, and ostensibly following Chambers' trial, Greer would have been beyond his reach due to her active duty status with the Air Force then and for years thereafter. This bald assertion, however, is belied by both common sense and the record. Steven Junkin, at the time of the PCRA hearing the Chief of Police for Hampden Township Police Department, and a corporal in the Pennsylvania State Police during the investigation of Bull's murder, testified that, in connection with other investigations, he had located active-duty military personnel with little difficulty. N.P.T. at 56-57. When asked to elaborate, he explained how one might locate active military personnel:

> First is you could contact family members and ask them where the person is located. You could go to a recruiting station and ask them to locate. In the area here, there's the Army War College, there's the Navy Depot, there's various places that you could go and reach out and ask them.

*Id.* In this connection, Greer testified that she had numerous family members that still resided in the area, both in the years immediately following Lockhart's trial and at the time of the PCRA hearing. *Id.* at 27-29. Furthermore, it is not at all clear that Greer would not have been subject to the court's subpoena authority while serving. Indeed, in attesting that she was available and willing to testify, Greer at least suggests that she could have made efforts to arrange to attend the trial. *Id.* at 16-18. That she visited Shippensburg on leave on at least two occasions during her service further reinforces that conclusion. Finally, Greer served in the Air Force for

six years before her honorable discharge. Consequently, even if she had not been available during her service, she was a civilian who could have been located for the latter half of the time between Lockhart's trial and the date of filing for the instant PCRA petition.

In any event, neither Lockhart nor she provides a concrete basis beyond conclusory assertions upon which to conclude that Greer could not have been located, had Lockhart or his counsel endeavored to do so, or that she would not have been amenable to process or otherwise available at the time of trial or during the years that separated her service from when she furnished the affidavit upon which Lockhart's petition relies. Thus, this argument is not responsive insofar as Lockhart's mere pleading that she would not have been accessible to him until after her discharge satisfies, at most, his burden to **plead** that fact. It did not obligate the PCRA court to conclude that he had **proved** it.

Setting aside Lockhart's ability to discover her location and contact her, we are left with a more important basis upon which to conclude that Lockhart did not diligently investigate these matters in a way that would have led him to contact Greer. During the PCRA hearing, Lockhart testified that he had spent years in the prison library researching his case. ***See*** N.P.T. at 51 (testifying that he has "always been researching [his] case" and that he has done so "[a]ll the time, because [he is] innocent"). Furthermore, he understood that Chambers, the most critical prosecution witness against Lockhart, later was tried for the killing. And yet Lockhart

was entirely and unconvincingly dismissive of the very notion that, in service of his objective, he might have educated himself as to the evidence introduced during Chambers' trial. ***See id.*** at 52 (responding to an inquiry about what he knew about Chambers' trial, "I had my own concerns right now that I'm trying to worry about"). Although it is fair to say that, as a state prisoner, Lockhart may have had difficulty obtaining those public records, he does not assert or imply that he made any effort to do so. Had he done so, he would have discovered that, at Chambers trial, Chambers testified that he had been at the Brenizes' party in support of his alibi defense, and that Brenize himself was questioned regarding whether Chambers had attended the party. Although Brenize testified that he could not remember specifically whether Chambers attended the party, the issue nonetheless was broached at Chambers' trial, which presumably would have indicated to Lockhart, had he learned of this fact, that he should investigate whether other witnesses might be able to corroborate Chambers' claim.[8]

There is yet another obvious basis upon which to question Lockhart's diligence. Chambers, of course, recanted at trial, asserting on cross-examination that he was not involved in any way in the killing, and was not present in the woods where it occurred at any time relevant to the

---

[8] Ultimately, Lockhart himself acknowledged the fact and gravamen of this testimony during his PCRA proceedings, ostensibly after reviewing the record of Chambers' trial. ***See*** Lockhart's Brief in Opposition to Commonwealth's Motion to Dismiss PCRA Petition Without Hearing at 3.

prosecution.  Although he was not asked, and did not offer, alibi evidence to establish his whereabouts that evening, surely this was relevant information that the defense (or the prosecution) might have attempted to elicit.  Had counsel done so, in an exercise of thoroughness in cross-examination, Chambers might have mentioned the Brenizes' party, enabling Lockhart to seek to corroborate such an account.

Although we appreciate that the PCRA court, perhaps in an abundance of caution, seemed to credit Lockhart's invocation of the newly-discovered fact exception to the PCRA's time requirements, we may not disregard any cloud over jurisdiction that we discern.  **See Commonwealth v. Gandy**, 38 A.3d 899, 902.  The PCRA court appeared to assume rather than conclude that the exception applied, because the court did not acknowledge the timeliness issue in its Rule 1925 opinion and made no fact-finding relevant to that question.  However, after careful review, we conclude that the record fails to provide a basis for the PCRA's court's implicit conclusion in that regard.  Thus, we find that the PCRA court, and now this Court, lack jurisdiction to evaluate the merits of Lockhart's petition.  Because the PCRA court dismissed that petition, the outcome is the same.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/7/2015