J-S01042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
JOSHUA MICHAEL LUKACH :
:
Appellant : No. 680 MDA 2024

Appeal from the PCRA Order Entered April 29, 2024
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001710-2015

BEFORE: NICHOLS, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED: JANUARY 28, 2025**

Appellant, Joshua Michael Lukach, appeals from the order entered in the Court of Common Pleas of Schuylkill County denying relief on his second petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Herein, Appellant contends that evidence of his belated discovery that first PCRA counsel ineffectively failed to file an appeal from the order dismissing his first PCRA petition qualified his second petition for the newly-discovered fact exception to the PCRA's one-year time-bar. Appellant's counsel, Attorney Karen L. Domalakes, has filed a petition to withdraw and an accompanying **_Anders_** Brief.[1] After careful consideration, we affirm the order entered below and grant counsel's petition to withdraw.

_____

[*] Former Justice specially assigned to the Superior Court.

_(Footnote Continued Next Page)_

On March 7, 2019, a jury found Appellant guilty of second-degree murder and other related crimes. Sentenced to life imprisonment, Appellant filed a counseled direct appeal to this Court, which affirmed judgment of sentence on November 25, 2019. *See Commonwealth v. Lukach*, No. 634 MDA 2019 (Pa. Super. 2019). Appellant's judgment of sentence became final thirty days later, on December 26, 2019, when he chose to forgo discretionary review from the Pennsylvania Supreme Court. *See* 42 Pa.C.S.A. § 9545(b)(3) (stating that "a judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review[ ]"); Pa.R.A.P. 903(a) (providing that a notice of appeal shall be filed within thirty days after entry of the order from which the appeal is taken).

On November 12, 2020, Appellant filed a timely first PCRA petition alleging ineffective assistance of trial counsel. The PCRA court appointed counsel, who filed an amended PCRA petition on January 14, 2021, raising issues of alleged ineffective assistance of trial counsel and alleged jury

---

[1] As discussed *infra*, because this appeal is from the denial of post-conviction relief, counsel was required to comply with the less restrictive procedural requirements of *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988) and *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). However, counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), which applies to requests to withdraw from a defendant's direct appeal. Because an *Anders* brief provides greater protection to a defendant, this Court may accept an *Anders* brief in lieu of a *Turner*/*Finley* letter. *Commonwealth v. Fusselman*, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004). Thus, we will consider counsel's petition to withdraw under the *Turner*/*Finley* standards.

misconduct in the form of engaging in pre-deliberation discussions of the case. Prior to a hearing on the matters alleged, first PCRA counsel filed a no-merit letter and a motion to withdraw as counsel pursuant to **Turner/Finley, supra**. The PCRA court held a hearing on counsel's motion to withdraw and denied it on June 16, 2021, ordering counsel to continue representation of Appellant at a scheduled July 19, 2021, evidentiary hearing on the jury misconduct issue.

The PCRA court presided over the evidentiary hearing, after which it entered its order of July 21, 2021, denying Appellant's counseled first PCRA petition for relief. Relevant for present purposes, however, are the notes of testimony from the hearing, which, both the Commonwealth and Appellant agree, confirm that the PCRA court gave first PCRA counsel and Appellant several minutes at the conclusion of the hearing to confer with one another prior to adjournment. The record also substantiates that service of copies of the PCRA court's order denying relief was made to first PCRA counsel and Appellant. First PCRA counsel did not file an appeal from this order.

Nearly two years passed before Appellant inquired into the status of the direct appeal he claims to have requested of counsel. In his *pro se* second petition under the PCRA filed on July 3, 2023, Appellant averred that on March 21, 2023, he went to the prison law library and asked the law clerk how long appeals were taking to be decided because of Covid-19 delays. The law clerk recommended he ask this Court about his appeal and prepared for Appellant a letter addressed to the Office of Prothonotary of this Court stating,

> I am writing to request the status of the appeal my lawyer filed from the Schuylkill County Court's denial of my PCRA on July 21, 2021. (*See* attached Order). I cannot get my attorney to respond to my letters, and I am becoming increasingly concerned because almost a year and a half has passed since I requested him to file the appeal. Finally, can you please send me a copy of my docketing statement?

Appellant's Letter to Prothonotary of Superior Court of Pennsylvania, 3/21/23 (C.R. #118).

According to Appellant's *pro se* petition, the Office of Prothonotary "never responded." It recounts, however, that Appellant continued to pursue the matter by finally reaching first PCRA counsel on May 22, 2023, "after numerous attempts" and asking him about the status of his appeal. According to the petition, counsel "remembered that I wanted to appeal . . . [but] further explained that after he looked into my case for any appealable issues, he could not find any, and decided not to file an appeal." *Pro Se* Second PCRA Petition, at 2.

Counsel's "confession", according to the *pro se* petition, constitutes "a new fact entitling [Appellant] to have his appellate rights reinstated. [Appellant] invokes both [*sic*] 42 Pa.C.S.A. § 9545(b)(1)(ii) [*infra*], the newly discovered fact exception[] to the PCRA's one-year time bar." *Pro Se* Second Petition, at 2. The petition further submitted that Appellant exercised due diligence when he requested first PCRA counsel to file the appeal, as "it was reasonable for him to wait 20 months before he contacted the Superior Court to inquire about his appeal in light of the covid-19 pandemic that was raging during his PCRA proceedings." *Id*.

On August 24, 2023, the PCRA court entered an order appointing the Schuylkill County Public Defender as second PCRA counsel and scheduling an evidentiary hearing to be held on September 29, 2023, where "the sole purpose of the hearing will be to receive evidence and argument on the issue of [the PCRA court's] jurisdiction to hear/decide the merits of Appellant's motion for post-conviction collateral relief." Order dated 8/24/2023.

At the hearing, which was held on November 29, 2023, Appellant testified consistently with the allegations he made in his *pro se* second PCRA petition. **See** N.T., 11/29/23, at 7-25. When asked by the PCRA court to specify when he told first PCRA counsel he wanted to appeal, Appellant recounted that the PCRA court had cleared the courtroom to give counsel and him "a couple minutes to talk." N.T. at 10; N.T., 2/12/24, at 5, 6. It was then, Appellant submitted, that he "advised [counsel] that I would like to appeal it then." N.T., 11/29/23, at 10.

He testified that he reiterated the request when speaking with first PCRA counsel on the phone after receiving the PCRA court's order denying relief. N.T. at 11; N.T., 2/12/24, at 8. According to Appellant, PCRA counsel said he would look into it. "He didn't give me no inkling if he was going to or not. But I assumed that he would." N.T. at 8. Appellant testified earlier that he "was under the impression that meant he was gonna appeal." N.T., 11/29/23, at 11. Appellant also acknowledged that first PCRA counsel told him either after the hearing or in the phone conversation after receiving the order denying relief that there was "nothing to hang your hat on." N.T., 2/12/24, at 9.

In this regard, first PCRA counsel testified he was not asked to file a direct appeal. N.T., 2/12/24, at 14. If Appellant had asked for one, counsel explained, he would have filed the appeal. "There's no question I would have filed it. And I probably would have followed it up with an **Anders** brief." N.T. at 14. He recalled, also, that in their phone call following the PCRA court's order denying relief, "I remember telling [Appellant], 'there was nothing to hang our hat on here', and with that, he thanked me and the discussion ended. I do not recall a request for an appeal in either conversation." N.T. at 16.

On cross-examination, Appellant admitted that afterwards, despite Covid-19 restrictions in effect at the prison, he retained the ability to write letters and mail them through the prison post office. N.T. at 15. He claimed he wrote first PCRA counsel "a couple times and asked him stuff, and I never heard nothing." N.T. at 16. He did not have copies of such letters, he could not say when he wrote them, and did not send them via certified mail like he did with the letter to the Superior Court. N.T. at 16-17.

On redirect, Appellant confirmed that he possessed a computer tablet that allowed him to send and receive emails with persons who set up an account and added him to their emails, N.T. at 18, and agreed that he wrote to the Schuylkill County Court requesting the docket sheets for this case and received the requested copies in January 2022. N.T. at 19. When asked by second PCRA counsel how often he wrote or called first PCRA counsel during 2021 and 2022, he reiterated that he did not know. N.T. at 21.

The PCRA court acknowledged its skepticism with Appellant's testimony before asking him how it could be he knew how to ask the court for his docket sheet during the relevant time, and successfully received it in prison, but did not know how to ask the court about the status of his appeal and now testifies it was because he thought there was no way to receive that information in prison.  N.T. at 24.

By its order and opinion of April 29, 2024, the PCRA court dismissed Appellant's second PCRA petition "due to lack of jurisdiction," finding, *inter alia*, that Appellant had failed to act with due diligence in ascertaining the status of his purportedly requested appeal of the order denying his first PCRA petition.[2]  This appeal followed.

Counsel for Appellant has filed a Petition for Leave to Withdraw as Counsel and an accompanying brief that satisfy the applicable procedural requirements of **Turner**/**Finley**.[3]  She submitted the brief, however, as one

---

[2] The PCRA court explained that in its role as finder of fact at Appellant's evidentiary hearings, it disbelieved Appellant's testimony that he requested an appeal, and found credible, instead, first PCRA counsel's testimony that Appellant never requested an appeal and he never offered to file one. Nevertheless, the PCRA court ultimately based its denial of relief on Appellant's failure to act with due diligence to discover the new fact of first PCRA counsel's ineffective failure to file an appeal, which, the PCRA court assumed *arguendo*, Appellant had requested.

[3] Pursuant to **Turner**/**Finley**, an "[i]ndependent review of the record by competent counsel is required before withdrawal [on collateral review] is permitted." **Commonwealth v. Pitts**, 981 A.2d 875, 876 n.1 (Pa. 2009). In **Pitts**, our Supreme Court explained that independent review requires proof of:

*(Footnote Continued Next Page)*

written to conform with the requirements of **Anders v. California**, 386 U.S. 738 (1967). The procedure to withdraw from a direct appeal imposes stricter requirements than those imposed in a **Turner/Finley** situation. **Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004).

---

> 1. A "no merit" letter by [ ] counsel detailing the nature and extent of his review;
> 2. The "no merit" letter by [ ] counsel listing each issue the petitioner wished to have reviewed;
> 3. [C]ounsel's "explanation", in the "no merit" letter, of why the petitioner's issues were meritless;
> 4. The [ ] court conducting its own independent review of the record; and
> 5. The [ ] court agreeing with counsel that the petition was meritless.

**Id.** (citation and some brackets omitted).

> Additionally:

> Counsel must also send to the petitioner: (1) a copy of the "no-merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

> If counsel fails to satisfy the foregoing technical prerequisites of **Turner**/**Finley**, the court will not reach the merits of the underlying claims but, rather, will merely deny counsel's request to withdraw. Upon doing so, the court will then take appropriate steps, such as directing counsel to file a proper **Turner**/**Finley** request or an advocate's brief.
> However, where counsel submits a petition and no-merit letter that do satisfy the technical demands of **Turner**/**Finley**, the [court] must then conduct its own review of the merits of the case. If the court agrees with counsel that the claims are without merit, the court will permit counsel to withdraw and deny relief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007) (citations omitted).

We note that counsel's purported **Anders** brief appears to meet the requirements set forth in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), although counsel's analysis regarding anything in the record that may arguably support the appeal is sparse.

In addition to the brief, counsel filed a petition for leave to withdraw as counsel and sent Appellant a letter informing him of his rights, pursuant to **Commonwealth v. Friend**, 896 A.2d 607, 615 (Pa. Super. 2006).  The letter is attached to counsel's petition to withdraw, which contains proof of service on Appellant, and the letter correctly advised Appellant of his immediate right to retain private counsel or proceed *pro se* with the appeal.[4]

In the **Anders** Brief, Appellant counsel raises the following issue:

_____

[4] The **Friend** letter contains correct advice, stating, "Please be advised that you have the immediate right to proceed *pro se* or hire private counsel to file any appeal or to argue any issues you may feel are meritorious. You will not be granted further Public Defender or Court Appointed Counsel services. Should you choose to pursue one of these options a briefing schedule has been issued and your brief is due July 17, 2024." Letter, June 10, 2024 (emphasis added). However, in the petition to withdraw, when referencing said letter, counsel misstates the required advice.  Specifically, the petition states: "A copy of this Merit Brief and attached Letter are being served on Appellant at his last known address along with a statement informing him that if the relief sought by this Petition is granted he may hire new counsel or proceed *pro se*, but that no further public defender or court appointed counsel will be provided."  Petition, June 10, 2024, at ¶ 6 (emphasis added).  Therefore, it appears counsel correctly notified Appellant of the immediate right to retain new counsel or proceed *pro se* in the letter, whereas the petition suggests said rights are contingent on this Court granting counsel's request to withdraw.  Because the advice in the actual **Friend** letter is correct, and the record shows Appellant responded to the letter by successfully exercising his right to file a *pro se* brief, we determine counsel's filings satisfy the relevant requirements for requests to withdraw in PCRA appeals.

Whether Appellant met his burden to show that the lower court had jurisdiction over [Appellant's] PCRA filed past the 1-year deadline?

*Anders* Brief at 7 (capitalization regularized).[5]

In Appellant's responsive *pro se* brief, he raises the following issues:

1. Did the PCRA court make its credibility determinations based on an incomplete record?

2. Was Attorney Domalakes (second PCRA counsel) ineffective for failing to present evidence in support of Appellant's PCRA claim that he requested an appeal?

3. Was Attorney Domalakes ineffective for failing to amend Appellant's PCRA Petition with a claim of prior counsel's ineffectiveness for failing to advise Appellant of the pros and cons of taking an appeal?

*Pro Se* Brief, at 3.

Our standard of review of an order dismissing a PCRA petition is well-

settled:

Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions de novo.

_____

[5] Counsel's *Turner/Finley* brief, using the language of *Anders*, deems Appellant's due diligence claim frivolous under the facts presented at the PCRA hearing below. *Turner/Finley* brief, at 8-12. We acknowledge the argument in counsel's brief and consider it along with Appellant's *pro se* arguments presented on appeal.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citations and quotation marks omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id*. at 145 (internal citation omitted).

We first consider whether the PCRA court had jurisdiction to adjudicate Appellant's facially untimely second PCRA petition, as the present appeal turns on this issue. The timeliness of a PCRA petition is a threshold jurisdictional matter that must be addressed. *Commonwealth v. Gandy*, 38 A.3d 899, 902 (Pa. Super. 2012). The timeliness restrictions of the PCRA "are jurisdictional in nature and are to be strictly construed." *Commonwealth v. Stokes*, 959 A.2d 306, 309 (Pa. 2008). Whether a petition is timely raises a question of law. *See Commonwealth v. Fahy*, 959 A.2d 312, 316 (Pa. 2008). Our standard of review for a question of law is *de novo* and our scope of review plenary. *Commonwealth v. Taylor*, 65 A.3d 462, 468 (Pa. Super. 2013). An untimely petition renders this Court without jurisdiction to afford relief. *Taylor*, 65 A.3d at 468; *Gandy*, 38 A.3d at 903.

A petition for relief under the PCRA, including a first petition, "shall be filed within one year of the date on which the judgment of sentence becomes final." 42 Pa.C.S.A § 9545(b)(1). As noted *supra*, Appellant's judgment of sentence became final on December 26, 2019. Thus, Appellant's successive

- 11 -

petition at issue, filed on July 3, 2023, was untimely by more than two and one-half years.

Therefore, to obtain review of the merits of any claim, Appellant had to plead and prove the applicability of one of the three exceptions to the PCRA timeliness requirements in the petition. *See* 42 Pa.C.S.A. § 9545(b)(1); *Commonwealth v. Perrin*, 947 A.2d 1284, 1286 (Pa. Super. 2008); *Commonwealth v. Geer*, 936 A.2d 1075, 1078–1079 (Pa. Super. 2007). Where "the petition is untimely and the petitioner has not pled and proven an exception, the petition must be dismissed without a hearing because Pennsylvania courts are without jurisdiction to consider the merits of the petition." *Commonwealth v. Woods*, 179 A.3d 37, 42 (Pa. Super. 2017); *Taylor*, 65 A.3d at 468; *Perrin*, 947 A.2d at 1285.

Here, Appellant asserts that his claim was reviewable under the exception for newly-discovered facts, *see* 42 Pa.C.S.A. § 9545(b)(1)(ii), which requires a petitioner to demonstrate that the facts upon which their claim is predicated were previously unknown and they could not have learned those facts sooner by the exercise of due diligence. *Commonwealth v. Bennett*, 930 A.2d 1264, 1271 (Pa. 2007); *Commonwealth v. Lambert*, 884 A.2d 848, 852 (Pa. 2005). Due diligence demands that the petitioner take reasonable steps to protect their own interests. *Commonwealth v. Carr*, 768 A.2d 1164, 1168 (Pa. Super. 2001). *See also Commonwealth v. Breakiron*, 781 A.2d 94, 98 (Pa. 2001). "[T]he newly[-]discovered fact exception does not require any merits analysis of the underlying claim, and

- 12 -

application of the time-bar exception therefore does not necessitate proof of the elements of a claim of after-discovered evidence." ***Commonwealth v. Small***, 238 A.3d 1267, 1286 (Pa. 2000).

Our review of the issues presented in Appellant's *pro se* brief reveals that he misconstrues the issue before us, which involves not only the merits of whether first PCRA counsel failed to file a requested appeal, but also—and first—whether he exhibited due diligence in discovering the fact of first PCRA counsel's alleged ineffectiveness in failing to file the purportedly requested appeal. That is, the "fact" that is newly discovered and, thus, instrumental in qualifying for the exception at Section 9545 is not Appellant's own purported request for a PCRA appeal but, instead, first PCRA counsel's ineffective failure to file the requested appeal.

Appellant's *pro se* brief provides no real insight into the question of how he satisfied his burden to make reasonable efforts amounting to "due diligence" to discover this new fact during the nearly two-year time lapse between his purported request for an appeal and his first inquiry into the status of the appeal. While he appropriately acknowledges long-standing jurisprudence expressed in ***Bennett*** that the discovery of a basis for alleging the abandonment of prior counsel may be sufficient to invoke the newly discovered fact exception found at Section 9545(b)(1)(ii), ***see id*** at 1275, he neither points to evidence nor offers persuasive argument that counsel's abandonment could not have been ascertained much sooner by due diligence. Despite making bald assertions that covid-19 restrictions and court-delays,

which began in March 2020,[6] impeded his ability to learn that no appeal had been filed, both the PCRA court and the Commonwealth alluded to evidence that belied this claim.

For example, as discussed *supra*, the Commonwealth noted that Appellant had no difficulty obtaining on his own a copy of his criminal docket sheet from the court in January 2022 when he requested it, and it contained no indication that an appeal from the order denying him relief on his first PCRA petition had been filed. Appellant also admitted that during the relevant time he successfully placed a July 2021 phone call to first PCRA counsel and spoke to him about his case, and otherwise had the ability to write and mail letters. No explanation was offered as to why he could not have contacted first PCRA counsel in early 2022 upon receiving the docket sheet.

The Commonwealth offers this Court's non-precedential decision in *Commonwealth v. Deloatch*, 283 A.3d 392 (non-precedential decision) (Pa. Super. filed July 25, 2022) as persuasive authority on the due diligence issue before us. In *Deloatch*, this Court addressed a PCRA appeal in which the appellant argued, *inter alia*, that the second PCRA court erred in rejecting his claim that first PCRA counsel was ineffective for failing to file an appeal from the denial of relief. Addressing the timeliness of the second PCRA petition, the *Deloatch* court, guided by *Bennett*, considered whether the newly-

---

[6] Appellant submitted no evidence that the Schuylkill County Court system was closed and not operating from 2020 to 2022, nor did he establish that the pandemic in general or an illness specifically prevented him from communicating with counsel or the courts during this time.

- 14 -

discovered fact exception was met by inquiring into whether appellant Deloatch had exercised due diligence in discovering that previous PCRA counsel had not filed an appeal.

> Therefore, Appellant sufficiently established that the "fact" of Attorney Eshbach's abandonment was "unknown" until December 5, 2019.
>
> The second prong of the newly-discovered facts exception, however, requires Appellant to demonstrate that he could not have learned of this fact earlier through the exercise of due diligence. It is well-established that "[d]ue diligence is a fact-specific concept that must be determined on a case-by-case basis." *Commonwealth v. Hill*, 736 A.2d 578, 588 (Pa. 1999). While the exercise of due diligence does not require perfect vigilance and punctilious care, a party must demonstrate that reasonable efforts have been put forth to obtain knowledge of a "fact." *Cox*, 146 A.3d at 230 (stating, the salient question is whether reasonable efforts were put forth to discover the facts upon which the newly-discovered facts exception is based); *see also Hill*, 736 A.2d at 588.
>
> Here, Appellant contends that he contacted Attorney Eshbach "once or twice" after the January 30, 2019, evidentiary hearing "regarding the status of his appeal" and that Attorney Eshbach "indicated that she was still waiting on a decision" from the PCRA court concerning Appellant's petition. Appellant's Brief at 11. Appellant asserts that, after his initial contact with Attorney Eshbach when he was informed that Attorney Eshbach was still waiting for a decision, he did not attempt to learn of the status of his PCRA petition, or its appeal, until his girlfriend contacted Attorney Eshbach in the Fall of 2019. *Id*. It was not until December 5, 2019, Appellant avers, that his girlfriend received the electronic mail response from Attorney Eshbach indicating that his petition had been denied, that the appeal period expired on March 2, 2019, and that his case was now closed. *Id*.
>
> . . .
>
> We concur with the PCRA court, and the record supports, that Appellant did not exercise reasonable efforts to discover that his

PCRA petition had been denied, that the appeal period had expired, and, as such, Attorney Eshbach had abandoned him because she failed to inform him of either of these events.[21] Aside from the telephone inquiry Appellant made to Attorney Eshbach regarding the status of his petition shortly after the January 30, 2019 evidentiary hearing, Appellant stated that he undertook no further efforts to inquire as to the status of his PCRA petition, including, *inter alia*, contacting the PCRA court directly despite having access to the means, *i.e.* telephone, internet, or postal service, by which to do so with ease until his incarceration for unrelated criminal charges in June 2019. **Once incarcerated, while his ease of access to methods of contacting the PCRA court may have become more arduous (albeit Appellant certainly had the ability to write the PCRA court as many *pro se* litigates so often do), Appellant's girlfriend only contacted Attorney Eshbach at Appellant's request in November 2019. These efforts, as the PCRA court found, fall short of the requirements necessary to demonstrate that the unknown facts could not have been discovered sooner through the exercise of due diligence.**

In sum, Appellant failed to plead and prove all of the elements necessary to invoke the newly-discovered facts exception to the PCRA's jurisdictional time-bar. Consequently, the PCRA court lacked jurisdiction to review Appellant's PCRA petition, and we may not review the substance of the petition on appeal.

*Deloatch*, 283 A.3d 392 at *10 (citations and footnotes omitted) (emphasis added).

Here, as in *Deloatch*, we discern no error with the PCRA court's determination that Appellant failed to establish that he undertook reasonable efforts consistent with his duty to act with due diligence to discover the fact that first PCRA counsel failed to file a requested direct appeal. Though Appellant was incarcerated at the time in question, and even assuming he was confronted in 2022 with some extant delays or difficulties associated with the covid-19 pandemic that arose in March of 2020, the evidence otherwise

showed that means of communication with counsel remained available to him, but he simply elected to forgo them for months on end, even after he had obtained the docket sheets of his case and seen no entry reflecting the filing of an appeal. On this record, the PCRA court appropriately invoked Section 9545(b)(1)(ii) to deny relief on Appellant's second PCRA petition. Accordingly, we grant counsel's petition to withdraw and affirm the PCRA court's order denying post-conviction relief.

Petition to Withdraw granted. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/28/2025

- 17 -